WILLIAM H. NEVINS *vs.* CITY COUNCIL OF SPRINGFIELD & others.

Hampden.    May 21, 1917. — June 27, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Municipal Corporations. Springfield. Evidence,* Presumptions and burden of proof. *Words,* "Purchase," "Again consider."

The city council of Springfield in laying out a highway does not act as an agent of the city but as a board of public officers, and in the performance of that public duty the members of the board are bound to assess damages, when such an assessment is required, according to their honest judgment unrestricted by anything contained in St. 1915, c. 263.

In the provision of St. 1915, c. 263, § 1, that, "Whenever the price proposed to be paid for a lot of land for any municipal purpose is more than twenty-five per cent higher than its average assessed valuation during the previous three years, the land shall not be taken by purchase but shall be taken by right of eminent domain," the word "purchase" is used in a restricted sense by way of contrast to "eminent domain" and describes the acquisition of land by a voluntary transfer of title by the owner to the city after an agreement as to terms.

The presumption that unless the contrary appears everyone is assumed to have acted from proper motives applies to the conduct of public officers as well as to that of individuals.

Upon a petition for a writ of certiorari to quash the proceedings for the laying out of Dwight Street in Springfield, it appeared that such laying out for a considerable distance was in effect a widening of a pre-existing street by taking a tract of land about twenty feet in width from the front of lots abutting on that street, and it was *held* that the record did not show, and the facts did not require the inference, that the awards of damages were not made in the exercise of honest judgment.

In the case above described it appeared that many of the owners of land whose property would be affected by the laying out of Dwight Street proposed in writing to the city council to accept stated sums in settlement of any damages which they might sustain, provided the street was laid out within a certain period, and also agreed to pay a sum not exceeding a given amount as betterments, and in a few out of many instances the awards corresponded exactly with the offers made by the landowners either as compensation for the fee of an entire parcel or for an easement over a part of the land, and it was *held* that this did not show that the action of the city council was influenced improperly by the offers.

In the case described above the order laying out the street authorized the city treasurer to pay the amounts awarded as damages "if said owners shall not attempt to recover damages by instituting proceedings for the recovery thereof," and it was *held* that the order did not undertake to prevent a landowner from exercising the right to have his damages assessed by a jury, that the laying

out was not made conditional upon the acceptance of the award by the landowner and that the provision quoted above did not vitiate the layout.

In the case described above the part of the offers of the landowners in regard to the amounts that they were willing to pay by way of betterments was not accepted by the city and there was no reference to that subject in the order laying out the street, so that it was unnecessary to consider *whether* it would have been possible for the city to make any contract that could hamper in any respect the freedom of action necessary for the performance by the board of aldermen as independent public officers of the *quasi* judicial act of assessing betterments.

A vote upon the question, whether a measure shall be passed in either branch of a city council notwithstanding the objections of the mayor, may be reconsidered, provided that such reconsideration is in accordance with the rules governing the procedure of the voting body.

PETITION, filed in its amended form on March 23, 1917, for a writ of certiorari addressed to the city council of Springfield and other officials of that city to quash the proceedings relating to the alleged widening of Dwight Street.

The respondents other than the city council of Springfield filed a motion to dismiss the petition as to them on the ground that the city council of that city had exclusive authority and power to lay out, alter and widen streets in that city. The motion was heard by *Braley,* J., who made an order dismissing the petition without prejudice as to all the respondents save the city council of Springfield.

Later the case came on to be heard before *Crosby,* J., who at the request of the parties reserved it upon the petition as amended, the answer to the amended petition and an agreed statement of facts for determination by the full court.

St. 1915, c. 263, so far as material to these proceedings, is as follows: "Section 1. Any city, except the city of Boston, by vote of the city council or board of aldermen, or board or commission having similar powers, together with the approval of the mayor, and any town by vote of the town, may take, for any municipal purpose, any land within the limits of the city or town not already appropriated to public use. Whenever the price proposed to be paid for a lot of land for any municipal purpose is more than twenty-five per cent higher than its average assessed valuation during the previous three years, the land shall not be taken by purchase but shall be taken by right of eminent domain, and shall be paid for in the manner provided in the case of land taken for highways. . . ."

The case was submitted on briefs.

*D. E. Leary, G. D. Cummings & G. F. Leary,* for the petitioner.

*C. H. Beckwith & R. A. Bidwell,* for the respondents.

RUGG, C. J. This petition for a writ of certiorari presents for consideration the validity of proceedings of the city council of Springfield in laying out Dwight Street.

The first contention is that the record of the city council shows a violation of St. 1915, c. 263. The material parts of that statute are printed above. The record of the city council in form constitutes a laying out of Dwight Street and the taking of land therefor in accordance with special statutes relating to Springfield. St. 1852, c. 94, § 4. St. 1873, c. 126, § 6 and the general law of St. 1904, c. 443. It is in form a taking by eminent domain. It conforms to the requirements of the statutes. It contains an estimate of the damages caused by the taking of land for the laying out of the street. The estimate of damages is required by the statutes as a part of the laying out of a highway when land is taken or damaged under eminent domain, provided that the board making the layout is of opinion that damages have been sustained by the landowner. In the laying out of a highway the city council does not act as an agent of the city but as a board of public officers. The members of the council are bound by the statute in exercising that public duty, when in their honest judgment damages have been caused by the layout of a street, to make an award of such damages. A laying out of a street in which no damages are awarded is construed as an adjudication that no damages have been sustained. The statutes contain no limitation upon the amount of damages which thus shall be awarded. There hardly can be read by implication into these statutes, which require an assessment of damages to be made according to the honest judgment of the board of public officers, a limitation upon the exercise of that judgment. If the Legislature had intended that no award of damages could be made under such statutes, except in accordance with the terms of St. 1915, c. 263, words plainly expressing such purpose would have been used. The word "purchase" as used in the second sentence of that statute does not have the broad meaning of acquisition of land by every means, including that of eminent domain, as it does in some other connections. *Burt v. Merchants' Ins. Co.* 106 Mass.

356, 364. It is employed by way of contrast to eminent domain. It signifies, as is apparent from its context, the voluntary transfer of title to land from the private owner to the city, after agreement as to the terms, as distinguished from a taking of title by authority of the State against the will of the owner. Of course the statutes under which Dwight Street was laid out are to be read in harmony with St. 1915, c. 263, so far as possible. But the latter act applies to the taking of all land "for any municipal purpose." There are many such purposes in the taking of land for which no assessment of damages is required. See for example, R. L. c. 25, §§ 45, 47, 48, 49, as to the taking of land for a town or city hall, a public school, library or engine house. St. 1915, c. 263, has a manifest application to purchases of land for these purposes and the settlement of damages occasioned by takings therefor by eminent domain. It also governs direct purchases or the settlement of damages for takings for highways. But it hardly stretches to include the making of awards of damages by a public board honestly acting in the performance of a duty imposed by the statute. If the city council should use this public duty as a mere pretext for evading and in truth violating the statute of 1915, such conduct would merit and receive swift and decisive condemnation. No *quasi* judicial act could stand which was so tainted with infidelity to important public trust. But it cannot be presumed that a wrong of this sort has been committed. Everybody is assumed to be acting from proper motives. It is taken for granted that conduct of public officers as well as of individuals is according to law unless the contrary is made to appear. *Doherty* v. *Ayer*, 197 Mass. 241, 248. *Bank of United States* v. *Dandridge*, 12 Wheat. 64, 69, 70. *Cincinnati, New Orleans & Texas Pacific Railway* v. *Rankin*, 241 U. S. 319, 327.

The contention is, however, that the present record shows a manifest evasion of the statute, and that in fact there was a purchase under the guise of a laying out with an award of damages. That contention is based on the fact that a number of the owners of land whose estates would be affected by the layout proposed in writing to the city council to accept stated sums in settlement of the damages which they might sustain, provided the street was laid out within a certain period, and further agreed to pay a sum not exceeding a given amount in way of betterments. Many of these propositions relate to instances where a part only

of a larger parcel was taken by the layout, and others to instances where an entire lot was taken in fee. There is nothing on the present record which requires an inference that the proceeding was a mere subterfuge for paying damages in settlement for land taken, contrary to the 1915 statute. The laying out of the street for a considerable distance is in effect a widening of a pre-existing street by the taking of a tract of land about twenty feet in width from the front of lots abutting on that street. Parts of several other parcels of land are taken. A table has been prepared designed to show that the awards are more than twenty-five per cent higher than the average assessed valuation during the previous three years, by averaging the assessed valuations of the whole of each of these several lots for three years, then dividing by the number of square feet in the whole lot, and multiplying the result by the number of square feet in the part taken, and adding twenty-five per cent. Manifestly this is not the method prescribed by the statute of 1915. It omits all consideration of buildings, and perhaps other elements. The record does not show and the facts do not require the inference that the awards of damages were not made in the exercise of honest judgment.

The instances where the entire parcel is taken present questions of greater difficulty. There are six parcels where the award of damages is in excess of an amount ascertained in accordance with the 1915 statute. But in only one of these is the award the equivalent of the offer made by the landowner before the order laying out the street was passed. In all the other instances the award is smaller than the offer. With some hesitation we conclude that these circumstances are not enough to show a purpose to evade the statute.

The circumstance that in a few out of many instances the award corresponds exactly with the offers made by the landowner, either for the fee of an entire parcel or for an easement over a part, does not show that the action of the city council was improperly influenced by the offers. It does not invalidate a layout that persons entitled to damages waive the whole or a part of the damages to which they might be entitled. *Crockett* v. *Boston*, 5 Cush. 182. It is not necessarily wrong for a public board to ascertain, in advance of their exercise of eminent domain, the claims likely to be made by the landowners, nor to give to such

claims the weight to which they fairly are entitled in reaching their decision. The offers do not appear to have affected the adjudication that public necessity and convenience demanded the layout of the street. *Copeland* v. *Packard*, 16 Pick. 217.

The order laying out the street authorizes the city treasurer to pay these amounts awarded as damages "if the said owners shall not attempt to recover damages by instituting proceedings for the recovery thereof." This does not vitiate the layout. It is possible that by implication this would be the effect of any such award. But however that may be, the order in question does not undertake to prevent the landowner from exercising the right of having his damages assessed by a jury. His rights in this respect are unimpaired. The layout is not made conditional upon the acceptance of the award by the landowner. Even the absence of any reference to an assessment of damages would not affect the validity of the layout. *North Reading* v. *County Commissioners*, 7 Gray, 109, 112, 113.

The portion of the offers of the landowners respecting the amount which they were willing to pay by way of betterments was not accepted by the city. There is no reference to that subject in the order laying out the street. The board of aldermen will act, when it comes to the assessment of betterments, quite untrammeled by any agreement to which the city has become a party. It is unnecessary to consider whether it would be possible for the city to make any contract which could hamper in any respect the freedom of action necessary to the performance of the *quasi* judicial act of that public board in the assessment of betterments, a function performed not as agents of the city but as independent public officers.

There is nothing in the assignment of error that the board of aldermen were not permitted to reconsider at the next meeting in accordance with notice the vote whereby the order was adopted. No motion to that effect was made.

The order laying out Dwight Street was passed by both branches of the city council and presented to the mayor. It was not approved by him but returned to the board of aldermen, in which it originated, with his objections. That board voted by the requisite majority to pass the order notwithstanding the objections. It then was sent to the common council, whose record

shows that "a vote to pass the order failed to carry," and that a member of the council "gave notice that he would move reconsideration of this last vote at the next meeting." The record of the next meeting held three days later is: "A motion to reconsider made and duly seconded and carried. . . . The order was then read and passed in concurrence by roll call vote," followed by the names of those voting yea and nay and showing a majority of two thirds of the members voting.

The provisions of the governing statute are in R. L. c. 26, § 9, in these words: "Every order of a city council . . . shall be presented to the mayor. If he approves it, he shall sign it; if he disapproves it, he shall return it, with his objections in writing, to the branch wherein it originated, which shall enter such objections at large on its records and again consider it; and if two thirds of the members present and voting pass it, notwithstanding such objections, it shall, if it did not originally require concurrent action, be in force; but if it originally required concurrent action, it shall be sent, with the objections of the mayor, to the other branch, where it shall be again considered, and if passed by two thirds of the members present and voting, it shall be in force; but in all cases the vote shall be by yeas and nays. . . ."

The question to be determined is whether on this record as matter of law the order was passed over the veto of the mayor. The particular point is whether a vote on the order, taken in the light of the objections urged by the mayor, can be reconsidered and voted upon a second time, or whether such a vote once taken is final action.

The statute requires certain positive steps to be taken. The objections of the mayor in writing must be extended upon the record. The measure to which the mayor has interposed his objections must be considered again. The vote must be taken by yeas and nays. It can become operative only when passed by a two thirds vote. There are other inherent limitations, as for example, that the measure must be considered as a unit. It cannot be amended or changed. The very thing to which the executive objection has been made is the only measure to be considered. But aside from the limitations imposed by the positive terms and the imperative implications of the statute, the parliamentary body is left free to act according to its custom. There are no

other restrictions upon its conduct. No time is fixed within which the vote must be taken. There is no prohibition against reference to a committee. There is no limitation upon the freedom or length of debate. There is no inhibition against postponement of the vote from time to time. So long as the specific requirements of the statute are followed, there is nothing in the statute to control further the conduct of the legislative body. The particular mode of procedure by which the final determination of that body shall be ascertained and declared, except as to the points enumerated, is left to general parliamentary procedure or to the particular rules of the legislative body. If the rules of the body permit reconsideration of any vote, there appears to be no reason in the statute why a vote upon such consideration anew of a measure vetoed by the executive may not be permitted. The words of the statute that, if the measure is passed by the requisite number of votes, it "shall be in force," notwithstanding the objections of the mayor, refer to the decisive vote as finally ascertained and declared according to the parliamentary usages of the body voting, and not necessarily to the first vote if such vote is subject to reconsideration.

The motion to reconsider in the case at bar was made and considered in accordance with a rule of the common council which in its general terms applied to a vote of this kind. A vote on the passing of the measure over the objections of the mayor, speaking accurately, is not a motion to reconsider the measure. That vote is upon a new question never before presented to the body, viz.: whether the measure shall be passed notwithstanding the objections of the mayor. That is a different question from any presented at the earlier stages in the consideration of the matter.

There is considerable diversity amongst legislative precedents upon this question.

The words of the instant statute do not differ in substantial particulars from the provision of the Constitution of the United States whereby, in art. 1, § 7, the qualified veto power is conferred upon the President. The question arose in 1844 in the national House of Representatives, whether a vote upon the consideration again of a bill in the light of the objections stated by the President as the reason for withholding his approval, falling short of the necessary two thirds, could be reconsidered. It was

ruled by the Speaker, after a somewhat extended debate, that there could be no such reconsideration, and on appeal the ruling was sustained by the House. 13 Congressional Globe, 672. This apparently has been accepted as the practice of the national House of Representatives. See 5 Hinds' Precedents, page 322, § 5644, (83 House Documents, 2nd Session, 59th Congress). Parliamentary writers seem to have accepted this precedent as controlling and are agreed against a reconsideration of a vote once taken upon a vetoed bill. Cushing's Law & Practice of Legislative Assemblies, § 2388. Barclay's Digest, 197. Fish's Manual, § 82. Spofford's Practical Manual, 139. Wilson's Digest Parliamentary Law, 292, § 2151. None of these writings contains any discussion of the subject, and Cushing, Barclay and Wilson wrote before 1856. See, also, an opinion by Chief Justice Thompson of the Supreme Court of Pennsylvania, sitting at *nisi prius,* in *Sank* v. *Philadelphia,* 4 Brews. 133, to the same effect, although it was then recognized, at page 144, that practice in the House of Representatives of that State was the other way.

The same question arose twice on the sixteenth of August, 1856, in the Senate of the United States, where the president *pro tempore* ruled that a vote of less than two thirds of the members present and voting in favor of the passage of a bill, notwithstanding the objections by the President, might be reconsidered. An appeal was taken from one of these rulings, but the ruling was sustained. 40 Congressional Globe, 2169, 2205, 2206. See 14 Senate Documents, 3rd Session, 62nd Congress, No. 1123, pages 505, 562.

A ruling that such a vote might be reconsidered was made by the Speaker of the Massachusetts House of Representatives respecting the force and effect of c. 1, § 1, art. 2 of our Constitution, conferring a qualified veto power upon the Governor, which is in substance the same as that of the Federal Constitution and of the statute here in question. Journal of the House of Representatives, 1874, pages 583, 586. But, although made after some debate, time does not appear to have been taken for deliberation and the practice of Congress and the pertinent sections of writers upon parliamentary law do not seem to have been considered. This ruling was followed as a precedent seemingly without much independent consideration in an instance reported in the Journal of the Massachusetts House of Representatives, 1905, page 1098.

Some confusion seems to have arisen because of the use of the word "reconsider" in both the State and Federal Constitutions. That is avoided in the instant statute, where the words are "again consider."

An unbroken legislative practice upon a question partaking so much of the nature of pure parliamentary law would be entitled to weight. But there is no harmony among legislative bodies. On principle in our opinion a vote upon the question, whether a measure shall be passed by either branch of a city council notwithstanding the objections of the mayor, may be reconsidered provided that is in accordance with the rules governing its procedure.

The conclusion is that no error of law warranting a quashing of the order is shown.

*Petition dismissed.*