HENRY J. SHEA *vs.* INSPECTOR OF BUILDINGS OF QUINCY.

Suffolk.    October 26, 1948. — January 3, 1949.

Present: QUA, C.J., LUMMUS, DOLAN, WILKINS, & WILLIAMS, JJ.

*Municipal Corporations*, Acquisition of land, Department. *Way*, Public: building line, taking. *Eminent Domain*, Preliminary steps. *Mandamus. Words*, "Department."

The requisite preliminaries to the taking involved in the establishment of a building line under G. L. (Ter. Ed.) c. 82, § 37, in a city operating under a Plan A charter are those stated in c. 43, § 30, as appearing in St. 1938, c. 378, § 11, and not those stated in c. 40, § 14, as appearing in St. 1933, c. 283, § 1.

The establishment of a building line under G. L. (Ter. Ed.) c. 82, § 37, in a city subject to c. 43, § 30, as appearing in St. 1938, c. 378, § 11, might not be rendered void by the absence of a previous appropriation for the purpose of paying land damages resulting from the establishment.

The word "department" in the requirement of G. L. (Ter. Ed.) c. 43, § 30, as appearing in St. 1938, c. 378, § 11, that action by a city subject thereto must be "At the request of any department," means an executive or administrative department of the city and not the city council.

Action by the city council of a city operating under a Plan A charter, purporting to establish a building line under G. L. (Ter. Ed.) c. 82,

§ 37, without having been requested so to do by a "department" of the city, was void because in violation of c. 43, § 30, as appearing in St. 1938, c. 378, § 11.

A writ of mandamus was ordered by this court to issue directing an inspector of buildings of a city to issue a building permit where it appeared that the respondent had refused the permit solely because the proposed building would "overlap" a building line and that the establishment of the building line was void because purported to be established by the city council without a preliminary request of a department of the city as required by G. L. (Ter. Ed.) c. 43, § 30, as appearing in St. 1938, c. 378, § 11, and it did not appear that any department of the city would make such a request or that, if it were made, the council would again vote for establishment of a line which the building would "overlap."

PETITION, filed in the Superior Court on December 29, 1947, for a writ of mandamus.

The case was heard by *Warner,* J.

In this court the case was submitted on briefs.

*G. A. McLaughlin,* for the petitioner.

*J. P. Flavin,* City Solicitor, & *R. P. Gilman,* for the respondent.

QUA, C.J.   This is a petition for a writ of mandamus to command the inspector of buildings of Quincy to issue to the petitioner a permit for the erection of a building on property of the petitioner numbered 23–31A on Cottage Avenue in that city.  The respondent refuses the permit on the sole ground that the proposed building would "overlap" a building line purportedly established parallel to the north-easterly line of Cottage Street from Cottage Avenue to Revere Road by order of the city council approved by the mayor on January 9, 1947, recorded in Norfolk registry of deeds on January 15 of that year.

The question is whether the building line is valid.  In the Superior Court the case was heard on agreed facts amounting to a case stated, in which it was agreed that the facts set forth are all the facts material to the issues.  Judgment was ordered for the respondent.  The case is here on the petitioner's appeal.

The petitioner is a resident of Boston.  Notices of each of two hearings on the proposed establishment of the building line on Cottage Street were published in a Quincy news-

paper and mailed to each abutter appearing as owner of record as of January 1, 1946, on a list supplied by the assessors of the city. Notices for the petitioner were mailed to the vacant land on Cottage Avenue, although the office of the collector of taxes had the petitioner's address and before the second hearing had mailed his tax bill to that address, and he had paid it. On November 28, 1947, the petitioner, "with no knowledge of the action purporting to establish a building line," filed through an architect his application for the permit. Before passing the order the city council did not appropriate any money for the specific purpose of paying any land damages occasioned by the establishment of the building line then under consideration, and no damages were awarded in the order. The city of Quincy was operating under a "Plan A" charter. See G. L. (Ter. Ed.) c. 43, §§ 46–55.

Authority for establishment of building lines is found in G. L. (Ter. Ed.) c. 82, § 37, which the city of Quincy has accepted. This section provides that such a line "may be established in the manner provided for laying out ways," and that whoever sustains damage thereby "may recover the same under chapter seventy-nine." Chapter 79 contains general provisions relative to the taking of property by eminent domain and the award and recovery of damages for property taken. The establishment of a building line under c. 82, § 37, is treated as the taking of an easement in private property for a public use. *Curtis* v. *Boston*, 247 Mass. 417, 424, 425. *Watertown* v. *Dana*, 255 Mass. 67, 70. *Slack* v. *Inspector of Buildings of Wellesley*, 262 Mass. 404, 406. *Grove Hall Savings Bank* v. *Dedham*, 284 Mass. 92. In takings of private property by eminent domain the requirements of governing statutes are to be strictly observed. *Byfield* v. *Newton*, 247 Mass. 46, 57. *Radway* v. *Selectmen of Dennis*, 266 Mass. 329, 335.

The question principally argued by the parties in this case is whether the preliminaries to the taking were governed by G. L. (Ter. Ed.) c. 40, § 14, as appearing in St. 1933, c. 283, § 1, or by c. 43, § 30, as appearing in St. 1938, c. 378, § 11. These sections are similar in many important pro-

visions, but are dissimilar in some respects. Both sections relate to the purchase or taking of land for municipal purposes. Both require a previous appropriation, and both require a taking instead of a purchase, if the price to be paid is more than twenty-five per cent in excess of the average assessed valuation of the land during the previous three years. One of the principal differences between the sections is that c. 40, § 14, by its terms is made applicable generally to towns and to cities other than Boston, while c. 43, § 30, is one of the preliminary sections in the chapter relating to "City Charters." That chapter provides for the now familiar standard forms of city charter to be adopted, if they so vote, by cities other than Boston. By c. 43, § 45, these preliminary provisions, including § 30, are made applicable in cities adopting any one of the standard charters. See also c. 43, § 11, as appearing in St. 1941, c. 640, § 2. Another difference between c. 40, § 14, and c. 43, § 30, is that c. 40, § 14, provides for a purchase or taking by the aldermen of a city after previous authorization by the city council, whereas c. 43, § 30, provides for a purchase or taking by the city council "with the approval of the mayor and the city council under Plan A, B, C or D, or with the approval of the city manager and the city council under Plan E." This difference is explained by the absence of any body designated as a board of aldermen in any of the standard charters. Another difference between c. 40, § 14, and c. 43, § 30, closely connected with the difference last mentioned, is that c. 43, § 30, contains a provision not found in c. 40, § 14, that a purchase or taking be "At the request of any department." Still another difference is that c. 40, § 14, refers to the taking of "any land, easement or right therein," whereas c. 43, § 30, merely refers to the purchase or taking of "any land." [1] A final difference is that c. 40,

---

[1] The statute from which c. 43, § 30, is descended, when originally enacted as St. 1915, c. 267, Part I, § 30, referred to the taking of "any land" "in fee." The words "in fee" disappeared in the revision resulting in the General Laws in 1921. See G. L. c. 43, § 30. An easement is an interest in "land," and it may be held "in fee." *O'Shea* v. *Mark E. Kelley Co.* 273 Mass. 164, 170–171. The reference to easements came into c. 40, § 14, through St. 1923, c. 266. The order of taking must specify the nature of the interest taken, G. L. (Ter. Ed.) c. 79, § 1. *Walker* v. *Medford*, 272 Mass. 161, 164.

§ 14, now contains a restriction, inserted by St. 1933, c. 283, § 1, limiting a purchase or taking under that section to a purchase or taking "not otherwise authorized or directed by statute." No such limitation is found in c. 43, § 30. There are some other differences of less significance. It can be said that c. 43, § 30, is somewhat more restrictive than c. 40, § 14.

· The histories of c. 40, § 14, and of c. 43, § 30, shed some light upon the purposes intended to be served by these sections and upon their present construction. What is now c. 40, § 14, first assumed a form approximating its present form in St. 1915, c. 263, § 1. What is now c. 43, § 30, first appeared as Part I, § 30 of St. 1915, c. 267, which in its other sections was the statute originally establishing the standard charters. Not only were these two acts passed by the same Legislature, but they were approved on successive days. Notwithstanding the differences between the sections in question, the similar portions were worded so nearly alike as to point to a common origin or at least to close collaboration in their drafting.

Both from the present wording and setting and from the histories of c. 40, § 14, and c. 43, § 30, it is impossible to avoid the conclusion that these sections cannot both apply to the same taking, but that they were intended to serve substantially the same purposes in different fields, c. 40, § 14, being a general provision applicable to all towns and to all cities except Boston and except those having standard charters; and the somewhat more stringent provisions of c. 43, § 30, being specially designed to operate only in cities having standard charters. See *Cunningham* v. *Mayor of Cambridge,* 222 Mass. 574, 576–578; *Safford* v. *Lowell,* 255 Mass. 220, 224; *Gilliatt* v. *Quincy,* 292 Mass. 222, 223–224; *Eastern Massachusetts Street Railway* v. *Mayor of Fall River,* 308 Mass. 232, 233; *Ellison* v. *Haverhill,* 309 Mass. 350, 352.

It was settled by *Nevins* v. *City Council of Springfield,* 227 Mass. 538, at page 541, that St. 1915, c. 263, the ancestor of the present c. 40, § 14, governed takings for public ways as well as for other purposes in towns and in cities to which

it was applicable and operated to supplement the provisions of other statutes including those of c. 82, §§ 21–24, relating specifically to ways in cities and towns. In *Walker* v. *Medford*, 272 Mass. 161, a similar decision was made as to G. L. c. 40, § 14, itself. See also *Burnham* v. *Mayor & Aldermen of Beverly*, 309 Mass. 388, 393–394. The *Nevins* case was decided before the exception limiting the purpose of taking to one "not otherwise authorized or directed by statute" was inserted in what is now c. 40, § 14. No such exception has ever been inserted in what is now c. 43, § 30. If St. 1915, c. 263, the ancestor of c. 40, § 14, applicable to towns and to cities (except Boston) not having standard charters, governed takings for ways, its companion St. 1915, c. 267, Part I, § 30, the ancestor of c. 43, § 30, applicable to cities having standard charters, must also have governed takings for ways, and the present c. 43, § 30, must still govern such takings, and therefore also must govern the establishment of building lines under c. 82, § 37.

The result of the foregoing discussion is that G. L. (Ter. Ed.) c. 40, § 14, does not govern a taking for a building line in Quincy, both because such taking is "otherwise authorized . . . by statute" and, apart from this, because takings in cities like Quincy having standard charters are controlled by G. L. (Ter. Ed.) c. 43, § 30, and not by c. 40, § 14. Such takings must, of course, be so conducted as not to conflict with any applicable provisions of c. 82 relating to ways or building lines, or with c. 79, relating to all takings by eminent domain. *Walker* v. *Medford*, 272 Mass. 161. *Antoun* v. *Commonwealth*, 303 Mass. 80, 82. *Amory* v. *Commonwealth*, 321 Mass. 240, 244.

The absence of a previous appropriation might not render the building line void. It has been held that the laying out of a street without awarding damages is an adjudication by the taking authority that no damages have been sustained. *Nevins* v. *City Council of Springfield*, 227 Mass. 538, 540. *Broderick* v. *Department of Mental Diseases*, 263 Mass. 124, 128. And it has been said that if there are no damages, no appropriation is required. *Merrymount Co.* v. *Metropolitan District Commission*, 272 Mass. 457, 464.

But it is an express requirement of c. 43, § 30, that any purchase or taking of land by the city be "At the request of any department." We must read the statute as requiring the request of a department as a condition precedent to any purchase or taking of land. The reason for the requirement may have been that the Legislature thought it would be safer if the necessity for a particular purchase or taking and the adaptability of the land to the proposed use should first become apparent to some department in the course of the performance of its duties, and if the department should first decide to make a request. Whatever the reason was, the Legislature saw fit to make the requirement, and it cannot be ignored. *Breckwood Real Estate Co.* v. *Springfield,* 258 Mass. 111, 114. See *Greenfield* v. *Burnham,* 250 Mass. 203, 210–211; *Watertown* v. *Dana,* 255 Mass. 67; *Reed* v. *Springfield,* 258 Mass. 115; *Markiewicus* v. *Methuen,* 300 Mass. 560, 563.

The whole purpose of c. 43, § 30, was to place limitations upon the purchase or taking of land in order to prevent hasty or ill advised action by city councils. The word "department" in this section plainly refers to an executive or administrative department of the city government, just as it does in §§ 5, 18, 29, 52, 54, 60, 61, 67, 75, 76, 77, 104, 105, and 108 of the same chapter. *King* v. *Mayor of Quincy,* 270 Mass. 185. See *Trustees of the Boston Public Library* v. *Rector of Trinity Church,* 263 Mass. 173; *Eastern Massachusetts Street Railway* v. *Mayor of Fall River,* 308 Mass. 232, 233–234. It does not refer to the city council itself, even though that body may sometimes in common speech be called the legislative department of the city to distinguish it from the administrative departments. See *Attorney General* v. *Trehy,* 178 Mass. 186, 193–194. It was not intended that the city council should request itself to make a purchase or taking. It sufficiently appears from the facts agreed that there was no request for the establishment of the building line by any "department" of the city of Quincy. For this reason the building line is not valid.

As matters now stand, there appears to be no reason why the petitioner should not have his permit, since the respond-

ent refuses it solely because of the invalid building line. *Kenney* v. *Building Commissioner of Melrose*, 315 Mass. 291. We cannot know whether any department of the city will make the necessary request or whether, if one is made, the city council will again vote to establish the building line. The case stands as if no attempt had been made to establish a building line. In the circumstances, we think that a writ of mandamus should issue.

The judgment is reversed, and a writ of mandamus is to issue as prayed for.

*So ordered.*