STEPHEN D. BURWICK *vs.* MASSACHUSETTS HIGHWAY DEPARTMENT & another.[1]

No. 00-P-608.

Middlesex. February 4, 2002. - February 6, 2003.

Present: DUFFLY, DREBEN, & TRAINOR, JJ.

*Eminent Domain,* Validity of taking. *Real Property,* Easement. *Easement.*

The judge in a civil action erred in dismissing the plaintiff's claim that the defendant highway department illegally took an easement over his property for the benefit of the defendant developer, where the order creating the easement did not eliminate access to and egress from the benefited property by the closure of a particular road, and was therefore invalid under G. L. c. 81, § 7A; moreover, an access permit and a later order issued by the defendant highway department did not serve, either on their own terms or in conjunction with the original order, to satisfy the statutory requirements for the taking of an easement over the plaintiff's property. [306-310]

CIVIL ACTION commenced in the Superior Court Department on November 21, 1996.

The case was heard by *Ralph D. Gants,* J., on motions for summary judgment, and entry of separate and final judgment was ordered by *Christine M. McEvoy,* J.

*Roy A. Bourgeois* for the plaintiff.

*Martin M. Fantozzi* (*Mei-Ling Huang* with him) for Solomon Pond Mall LLC.

*John E. Bowen,* Assistant Attorney General, for Massachusetts Highway Department.

TRAINOR, J. Stephen D. Burwick (Burwick) appeals from a Superior Court judgment for the Massachusetts Highway

---

[1]Berlin Properties Limited Partnership. On January 11, 2000, Solomon Pond Mall LLC was substituted in the Superior Court for Berlin Properties Limited Partnership, the original defendant. Solomon Pond Mall LLC is now the real party in interest with respect to Burwick's claims.

Department (department) and Berlin Properties Limited Partnership (Berlin), dismissing Burwick's claim that the department illegally took an easement over his property for Berlin's benefit.[2] Concluding that the taking was invalid, we reverse.

*Facts and Procedural History.* The undisputed facts in the summary judgment record may be summarized as follows. This dispute originated with the development of the Solomon Pond Mall (the mall) in the towns of Berlin and Marlborough, near the intersection of Interstate Routes 290 (I-290) and 495 (I-495).

Berlin entered into an agreement with the trustees of the 1979 Leavitt Trust, by which it obtained a two-year option to purchase an 8.62 acre parcel of land in Marlborough and Northborough (the Leavitt parcel). The Leavitt parcel is bounded by I-290, Solomon Pond Road and a parcel of land in Marlborough owned by Burwick (the Burwick parcel) on which a motel is located. The only street access to the Leavitt parcel at that time was from Old River Road, which led into Donald J. Lynch Boulevard near its intersection with Solomon Pond Road. The Burwick parcel has street access to Donald J. Lynch Boulevard and Old River Road.[3] The Leavitt parcel and the Burwick parcel are depicted on a sketch that we have included as an appendix to our opinion.[4]

Berlin was required to obtain various permits and approvals from the Commonwealth in connection with the mall project, including certification by the Secretary of Environmental Affairs

---

[2]The defendants obtained partial summary judgment as to the validity of the easement taking, and, pursuant to their motions for entry of separate and final judgments under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), Burwick's complaint was dismissed on that claim as to Berlin and as to the department.

[3]As the size and configuration of Burwick's parcel apparently prevented trucks from turning around on the property and exiting directly onto Donald J. Lynch Boulevard, trucks used Old River Road primarily for egress to Donald J. Lynch Boulevard. However, no legal impediment prevented trucks (or other vehicles) from entering the Burwick parcel from Old River Road, or otherwise traversing Old River Road in either direction.

[4]This sketch was not produced by the parties or used in the proceedings below. However, because of the number and complexity of existing plans, we have commissioned the sketch from the engineering department of the Land Court as an aid to our decision. The sketch is included only for purposes of analysis and is not intended to be complete and accurate for any other purpose.

of the project's compliance with the Massachusetts Environmental Policy Act. Berlin submitted both final and amended environmental impact reports for the mall (EIRs) to the Executive Office of Environmental Affairs. The EIRs proposed measures to mitigate increased vehicular traffic caused by the development of the mall.

This plan was rejected by the department. The department indicated that it intended to eliminate the use of Old River Road as an access to Donald J. Lynch Boulevard and would explore other means of access to the Leavitt parcel. Burwick objected to this change. Despite negotiations among Burwick, Berlin, and the department, the parties were unable to reach a mutually satisfactory resolution to Burwick's concerns about proposed limitations to access to and egress from the Burwick parcel. Later, and without notifying Burwick, the department approved a plan that allowed vehicles to exit the Burwick parcel using Old River Road to reach Donald J. Lynch Boulevard. Thereafter, the Secretary of Environmental Affairs certified the amended EIR, and Berlin exercised its option to purchase the Leavitt parcel.

About eight months later, in September, 1995, the department issued a highway access permit (access permit) to Berlin to construct an interchange at I-290 and Solomon Pond Road incorporating plans prepared by Berlin. Berlin's plan incorporated a State highway layout line that cut across Old River Road from Solomon Pond Road to the Burwick parcel. Notations on the plan indicated a proposed "exit only" driveway from Burwick's property to Donald J. Lynch Boulevard via Old River Road, and provided for the placement of a "Do Not Enter" sign at the intersection of Donald J. Lynch Boulevard and Old River Road, and "One Way" signs on Old River Road. This plan, proposed by Berlin, therefore curtailed any legal access to the Leavitt parcel by making Old River Road inoperative as a public way. The plan depicted a dumpster and other barriers on Old River Road approximately at the property line between the Burwick and Leavitt parcels.[5]

In December, 1995, Berlin entered into a "zero land dam-

---

[5]Burwick asserts that these items were placed there prior to the construction work on the interchange.

age" agreement with the department. The agreement expressly provided that:

> "It is also understood and agreed that the [department] will provide access via a permanent right of way easement to the remaining land east of River Road [Leavitt parcel] over land n/f Stephen D. Burwick to Donald J. Lynch Boulevard."[6]

In furtherance of that obligation and during construction of the interchange, the department issued an order of taking, recorded in the Middlesex Southern District Registry of Deeds in April, 1996 (1996 order), which took an easement over a 6,344 square foot swath of land on the Burwick parcel between the Leavitt parcel and Donald J. Lynch Boulevard. The initial draft of the 1996 order, prepared by Berlin's project engineer and reviewed and revised by the department's right of way bureau, declares:

> "An easement is hereby taken in a parcel of land shown on the plan hereinafter referred to as Parcel 21-R-1 [Burwick parcel easement] . . . on behalf of an owner of land [Berlin] whose rights of access thereto and egress therefrom would otherwise be inoperative due to limited access provisions of the State highway alteration . . . ."

The order, however, did not limit the right of access to or egress from the Leavitt parcel by way of the Old River Road. Rather, it declared:

> "The right of access to and egress from the State highway is limited, being allowed across the location lines of the Section of highway altered and laid out as hereinbefore described, only as follows:
>
> "1. *Free access to and egress from said location is al-*

---

[6]This agreement was executed by Berlin and the department only. It is not apparent under what authority the department purported to contract away the property rights of a third party, Burwick. The agreement does not comport with the requirements of G. L. c. 81, § 7A, discussed within, and, in light of the facts of this case, it casts doubt upon the "public purpose" aspect of the challenged taking because the power of eminent domain cannot be "contracted or bartered away." *Burnes* v. *Metropolitan Dist. Commn.*, 325 Mass. 731, 734 (1950). See *HTA Ltd. Partnership* v. *Massachusetts Turnpike Authy.*, 51 Mass. App. Ct. 449, 454 (2001).

*lowed across the location line* as hereinbefore described [as Old River Road]" (emphasis added).

Since the face of the 1996 order allowed both access to and egress from the Leavitt parcel via Old River Road, Burwick brought this action claiming there was no need for the easement over his property and hence the taking was invalid. More than a year after this action was brought, the department issued a revised order dated February 4, 1998 (1998 order), that permitted egress from Old River Road but barred entry into that roadway.[7] This revised order made no reference to the taking of any easement over Burwick's property.

*Discussion.* As a basis for taking the easement over Burwick's property for the benefit of Berlin, the department relied on G. L. c. 81, § 7A, which provides in relevant part:

> "In connection with the laying out, alteration or reconstruction of a state highway, the department may alter or relocate connecting ways as may be necessary. Land or rights in land may be acquired for this purpose by eminent domain . . . . The department may take or acquire by eminent domain under [chapter 79], easements in land outside the location of limited access state highways, said easements to be taken in behalf of those owners of land abutting said highways, whose rights of access to and egress from their land, and any other rights necessary to make the same available for use, will become inoperative due to the construction of said highway."

An easement may be taken pursuant to § 7A only if access to and egress from the property enjoying the benefit of the easement will be made inoperative by highway construction. Otherwise, as the trial judge noted, "the taking would both exceed the statutory grant of authority under G. L. c. 81, § 7A, and lack a sufficient public purpose." In this case, the easement taken over Burwick's property in the 1996 order was valid only if access to and egress from the Leavitt parcel was eliminated by the closure of Old River Road.

As the defendants concede, and the judge noted, the 1996

---

[7]As litigation progressed and representatives of the defendants were deposed, it became apparent to the department that the 1996 order had not restricted access to Old River Road.

order did not close Old River Road but stated expressly that "free access to and egress from" Old River Road was allowed. The judge concluded this provision to be "internally inconsistent" with the recital earlier in the document that an easement was being taken "on behalf of an owner of land whose rights of access thereto and egress therefrom would otherwise become inoperative due to limited access provisions of the state highway alteration." As the judge explained, if the department did not intend to limit access to and egress from Old River Road, then Berlin's rights of access to and egress from the Leavitt parcel would not have "become inoperative," and there would be no need to take an easement over Burwick's property. We agree that these provisions are internally inconsistent; however, we do not agree with the judge that this inconsistency rendered the 1996 order "silent as to what it intended with respect to Old River Road." To the contrary, the 1996 order clearly stated that free access to and egress from Old River Road was allowed. Evidently, this is not what the department intended, but it is what the 1996 order said.

In deciding the scope of an easement taken by eminent domain, we must consider the circumstances attending the taking, as well as the language of the taking order. *General Hosp. Corp.* v. *Massachusetts Bay Transp. Authy.*, 423 Mass. 759, 764 (1996). This does not permit us to construe a provision of the 1996 order to mean its precise opposite in order to "correct" an error by the department. "Where it is sought to take land by eminent domain, there must be strict compliance with the statutory authority and all precedent conditions must be performed before land can be taken for public uses from a private owner against his will." *Radway* v. *Selectmen of Dennis*, 266 Mass. 329, 335 (1929). See *Shea* v. *Inspector of Bldgs. of Quincy*, 323 Mass. 552, 554 (1949); *Chwalek* v. *Pittsfield*, 3 Mass. App. Ct. 759, 760 (1975). Where statutory requirements or conditions precedent are not satisfied, the purported taking is invalid or void. See *Watertown* v. *Dana*, 255 Mass. 67, 69-72 (1926) (failure by selectmen to adopt order of taking within ten days of town vote and to record order within thirty days); *Breckwood Real Estate Co.* v. *Springfield*, 258 Mass. 111, 113-114 (1927) (failure to obtain authorization or appropriation by two-thirds

vote of city council prior to taking); *Chwalek* v. *Pittsfield*, 3 Mass. App. Ct. at 760 (failure to effect taking within period approved by department of public health); *Dedham* v. *Gobbi*, 6 Mass. App. Ct. 883, 883 (1978) (absence of written request by conservation commission prior to taking).

General Laws c. 81, § 7A, requires as a condition precedent to the taking of an easement the elimination of access to and egress from the benefitted parcel. As conceded by the defendants, the 1996 order did not eliminate access to and egress from the Leavitt parcel. Because this condition was not satisfied, the 1996 order was invalid with respect to the easement taken. See *Shea* v. *Inspector of Bldgs. of Quincy*, 323 Mass. at 558; *Dedham* v. *Gobbi*, 6 Mass. App. Ct. at 883.

We also disagree as to the effect of the access permit and the concrete barriers on Old River Road. The judge found that as a result of the access permit and barriers, Berlin had "for all practical purposes" no access to or egress from the Leavitt parcel. This accords the access permit a greater legal significance than is merited. An access permit, issued under G. L. c. 81, § 21, grants permission to the applicant to perform work within the boundaries of a State highway. We note, as did the judge, that the terms of an access permit may be enforced by fines; we do not disagree that such fines are a deterrent to violation. However, there is no authority that the issuance of an access permit may serve to permanently close off a public way,[8] eliminating access to and egress from abutting parcels. Accordingly, the access permit (in its original form or as amended) could not, and did not, satisfy the statutory requirements for the taking of an easement over Burwick's property. Moreover, we find nothing in the record providing legal authority for the placement or existence of the concrete barrier across Old River Road, or the maintenance of it there, and therefore, we are unable to discern on what basis the judge found that this created a barrier of any *legal* significance. The record provided no explanation as to why Berlin — or indeed, any other party — could not simply remove the concrete barrier so as to traverse Old River Road.

---

[8]Old River Road is a Marlborough public way. Accordingly, the concrete barrier(s) obstructing Old River Road would appear to have been placed there unlawfully.

Finally, we disagree with the judge's conclusions as to the 1998 order. The judge was of the opinion that the 1998 order "confirmed the status" of Old River Road as a one-way street and eliminated any question as to the validity of the 1996 order. As discussed above, the 1996 order was invalid with respect to the Burwick parcel easement, because the statutory predicate for such a taking did not exist. Where the statutory requirements for an order of taking have been neglected, no subsequently entered order may cure the defect. See *Spare* v. *Springfield*, 231 Mass. 267, 269-270 (1918) (taking invalid where appropriation by city followed, rather than preceded, taking of petitioner's land, as required by statute; court rejected argument "that the subsequent appropriation made the previous taking a valid one"). See also *Lajoie* v. *Lowell*, 214 Mass. 8, 9 (1913); *Breckwood Real Estate Co.* v. *Springfield*, 258 Mass. at 113-114. The 1998 order could not render the defective 1996 order valid. Consequently, the 1998 order must, by its own terms, both 1) eliminate access to and egress from the Leavitt parcel by closure of Old River Road, triggering the department's authority under G. L. c. 81, § 7A, to take an easement over Burwick's property for Berlin's benefit; and 2) contain language effecting such a taking. The 1998 order does neither. Moreover, there is no language describing Burwick's property or reciting the taking of an easement over it. As the 1998 order "contained no description of the land intended to be taken, or the interest therein [to be] taken . . . [the] order does not authorize the taking of petitioner's land." *Reed* v. *Springfield*, 258 Mass. 115, 117 (1927). See *Breckwood Real Estate Co.* v. *Springfield*, 258 Mass. at 113. Accordingly, the 1998 order does not by its own terms effect a valid taking under G. L. c. 81, § 7A.

In short, the 1996 order, the access permit, and the 1998 order cannot be cobbled together to achieve a result that the department apparently sought but failed to accomplish: the closure of Old River Road, giving rise to statutory authority for the taking of an easement over Burwick's property for the benefit of Berlin. These efforts "were not the equivalent of compliance with the statutory requirements." *Watertown* v. *Dana*, 255 Mass. at 71. Accordingly, we determine that neither the 1996 order nor any prior or subsequent document effected a valid taking of the Burwick parcel easement.

The department is free to initiate new proceedings to effect a taking pursuant to G. L. c. 81, § 7A, with respect to the Leavitt and Burwick parcels. Of course, any such subsequent taking must comply not only with the terms of G. L. c. 81, § 7A, but also with the requirement applicable to all eminent domain takings: that there exist a demonstrable public purpose for the taking.[9]

The judgment for the defendants is reversed. A new judgment is to enter in favor of Burwick with respect to his claims regarding the Burwick parcel easement.

*So ordered.*

---

[9]Whether a taking is in fact for a public purpose or is one taken in "bad faith" is a proper subject for judicial examination. See *Luke* v. *Massachusetts Turnpike Authy.*, 337 Mass. 304, 308 (1958); *HTA Ltd. Partnership* v. *Massachusetts Turnpike Authy.*, 51 Mass. App. Ct. at 454. See also *Pheasant Ridge Assocs. Ltd. Partnership* v. *Burlington,* 399 Mass. 771, 775-778 (1987).