# HTA Limited Partnership & others[1] vs. Massachusetts Turnpike Authority.

No. 98-P-1246.

Middlesex. February 8, 2000. - May 3, 2001.

Present: Jacobs, Rapoza, & Gelinas, JJ.

*Massachusetts Turnpike Authority. Eminent Domain,* Authority for taking. *Practice, Civil,* Motion to dismiss. *Constitutional Law,* Separation of powers, Delegation of powers, Eminent domain, Taking of property.

Statement of the standard applicable to a motion to dismiss for failure to state a claim under Mass.R.Civ.P. 12(b)(6). [451-452]

A Superior Court judge correctly dismissed pursuant to Mass.R.Civ.P. 12(b)(6), a claim in an action to rescind an eminent domain taking of property by the Massachusetts Turnpike Authority for use as a park and ride facility, alleging that the authority's enabling legislation, St. 1952, c. 354, § 5, as amended through St. 1980, c. 49, violated art. 30 of the Massachusetts Declaration of Rights. [452-453]

A Superior Court judge correctly dismissed, pursuant to Mass.R.Civ.P. 12(b)(6), a claim in an action to rescind an eminent domain taking of property by the Massachusetts Turnpike Authority, alleging that the authority exceeded the scope of its power when it acquired the property for use as parking lots to serve the general public. [453-454]

A Superior Court judge incorrectly dismissed, pursuant to Mass.R.Civ.P. 12(b)(6), claims in an action to rescind an eminent domain taking of property by the Massachusetts Turnpike Authority, alleging that the authority took the property in bad faith and for ulterior motives in violation of the Fifth Amendment to the United States Constitution and art. 10 of the Massachusetts Declaration of Rights, where the general allegation of the claims was supported by the specific allegation that the property was taken to provide private property with access to the public way, and where additional factual allegations indicated that the authority did not follow its usual practices to conduct the taking and that the property was not suitable for the stated purposes given for the taking. [454-457]

Civil action commenced in the Superior Court Department on August 11, 1997.

[1]Timothy K. Hanna and CMA Realty Trust.

The case was heard by *Isaac Borenstein,* J., on a motion to dismiss.

*Michael Anton Laurano* for the plaintiffs.

*Richard d'A. Belin* for the defendant.

GELINAS, J. Prompted by the necessity of reducing the number of single occupant vehicles, with the complementary objective of encouraging the use of multiple occupancy vehicles on the Massachusetts Turnpike (turnpike) to satisfy certain requirements of the Federal Clean Air Act and the State implementation plan, the Massachusetts Turnpike Authority (authority) conducted numerous studies in 1993 and 1994. One of the conclusions of those studies was that a park and ride area, where commuters meet to join with others and then travel the turnpike in a single car for the remainder of their commute, was needed in the area of exit 12 (Natick and Framingham) of the turnpike. In line with this conclusion, the property was taken by eminent domain.

This action, seeking to rescind the eminent domain taking on various grounds, followed. The authority filed a motion to dismiss, contending that the plaintiffs' complaint failed to state a claim upon which relief might be granted. See Mass.R.Civ.P. 12(b)(6), 365 Mass 755 (1994). The motion was allowed, and this appeal followed. We reverse the judgment of the Superior Court dismissing counts VI, IX, and X of the complaint, alleging that the taking was made in bad faith and for ulterior motives. We affirm the dismissal of the remaining counts.

*Facts.* In July, 1994, CMA Realty Trust (CMA) owned a parcel of real property located at 1672 Worcester Road, Framingham (locus).[2] The rear of the locus abuts the Massachusetts Turnpike west of exit 12 and is adjacent to a large commercial real estate development land known as the 9/90 Development. In 1994, the authority took the property by

---

[2]The plaintiffs' complaint explains the history of ownership of the property. In August of 1992, the property was encumbered by a note and mortgage, both of which were owned by the Federal Deposit Insurance Corporation (FDIC). When HTA Limited Partnership (HTA) filed for bankruptcy in August, 1992, the FDIC filed suit against HTA and received relief from the automatic stay. The FDIC then commenced foreclosure proceedings against the property. At the auction, Timothy Hanna bought the property, after which he transferred his ownership interest to CMA. CMA then leased the property to Hanna.

eminent domain. In June of 1997, the authority publically announced its intention to lease land adjacent to the turnpike to private businesses as a means of raising revenue. The plaintiffs first claim that the enabling legislation that grants the authority the power to take real property violates the separation of powers as mandated by art. 30 of the Massachusetts Declaration of Rights. The plaintiffs also assert that the authority exceeded the scope of its express powers by taking the locus to use it as parking lots to serve the general public. Furthermore, the plaintiffs claim that the authority took the property in bad faith and for an improper private purpose, i.e., to provide private property with access to a public way, thus violating the Fifth Amendment to the United States Constitution and art. 10 of the Massachusetts Declaration of Rights. The plaintiffs allege that the true reason the defendant took the property was to create a conduit to route 9 for the "9/90 Development" parcel. The plaintiffs claim that the authority's taking was arbitrary and capricious, because the property is not suitable for a park and ride facility and would not satisfy the requirements of the Federal Clean Air Act, and was taken with full knowledge that the property would not be so suitable.

*Standard of review.* " 'In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Furthermore, the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiff's favor, are to be taken as true." *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), quoting from *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). "The plaintiff is to be given the benefit of any doubt, and must prevail over the motion unless it appears *with certainty* that he is entitled to no relief under any combination of facts that could be proved in support of his claims [emphasis original] . . . . [T]he court is not to consider the unlikelihood of the plaintiff's ability to produce evidence to support otherwise legally sufficient complaint allegations, however improbable appear the facts alleged . . . ." *Brum* v. *Dartmouth*, 44 Mass. App. Ct. 318, 322 (1998) (citations omitted), *S.C.*, 428 Mass. 684 (1999).

Our review, then, must consider whether the plaintiffs have alleged sufficient facts to withstand a Mass.R.Civ.P. 12(b)(6) motion against their claims that (1) the authority's enabling legislation violates art. 30 of the Massachusetts Declaration of Rights (count I); (2) the authority exceeded the scope of its power in taking the property for use as a park and ride facility (count II); and (3) the authority took the property in bad faith and for ulterior motives in violation of the United States Constitution and the Massachusetts Declaration of Rights (counts VI, IX, and X). We discuss each of the above counts of the plaintiffs' complaint in turn.

*Count I*: The plaintiffs assert that the enabling legislation[3] that created the authority violates art. 30 of the Massachusetts Declaration of Rights. We disagree. But that question was clearly put and answered in *Opinion of the Justices*, 330 Mass. 713 (1953). There, the court considered whether the general grant of powers to the authority was a constitutional delegation of authority by the legislature. In particular, the court reviewed the provisions authorizing the authority to acquire by eminent domain "sites abutting . . . the turnpike" and for any purpose "as it may deem necessary for carrying out the provisions of the [enabling act.]" *Id.* at 716-717.

---

[3]The relevant portions of the enabling act, St. 1952, c. 354, § 5, as amended through St. 1980, c. 49, states as follows:

"The Authority is hereby authorized and empowered . . .

"(*f*) To acquire sites abutting on the turnpike and to construct or contract for the construction of buildings and appurtenances for gasoline stations, restaurants and other services and to lease the same for the above purposes in such manner and under such terms as it may determine;
. . .

"(*k*) To acquire in the name of the Authority by purchase or otherwise, on such terms and conditions and in such manner as it may deem proper, or by the exercise of the power of eminent domain in accordance with the provisions of chapter seventy-nine of the General Laws or any alternative method now or hereafter provided by general law, . . . any fee simple absolute or any lesser interest in such private property as it may deem necessary for carrying out the provisions of this act, including any fee simple absolute in, easements upon . . . abutting property to preserve and protect the turnpike . . . ."

Note that § 1-5(f) was amended to include "parking facilities and tourist information centers." St. 1997, c. 3, § 6.

The court discussed the constitutionality of the enabling legislation mainly in terms of the then recent amendment to art. 10 of the Massachusetts Declaration of Rights, see *Opinion of the Justices*, 330 Mass. at 717-726, and held that the legislation did not violate any part of the Massachusetts Constitution. See *id.* at 725-726. The court further held that restaurants and other such services mentioned in the act (see note 3, *supra*) did constitute part of the highway, did not involve a taking for private purposes, and would be "devoted to a public use." *Id.* at 723-724. As to the indefinite term "other services" as used in § 5(*f*), see note 3, *supra*, the court held that it should be construed to "refer only to such buildings, facilities and services as are reasonably necessary for the public purposes of the turnpike as described in the act." *Id.* at 724-725.

The dismissal of count I of the amended complaint was proper. Although advisory opinions of the Supreme Judicial Court are not binding precedents, see *Metros* vs. *Secretary of the Commonwealth*, 396 Mass. 156, 163 (1985), the plaintiffs have presented us with nothing to indicate that the Supreme Judicial Court would reach a different conclusion upon reexamination of the issues in the context of litigation.

*Count II*: The plaintiffs claim that the authority exceeded its powers when it acquired the locus for use as parking lots to serve the general public. The enabling act, St. 1952, c. 354, § 5(*f*), as amended through St. 1980, c. 49, grants the authority power to "acquire sites abutting on the turnpike and to construct or contract for the construction of buildings and appurtenances for gasoline stations, restaurants and other services and to lease the same for the above purposes in such manner and under such terms as it may determine." See note 3, *supra*. Section 5(*k*) of the enabling act also grants the authority power of eminent domain in order to acquire private property which it deems necessary to carry out the provisions of the enabling act. See note 3, *supra*.

In *Opinion of the Justices*, 330 Mass. at 724, the court held that "[t]he provisions in § 5(*f*) of the act for the leasing by the authority of 'gasoline stations, restaurants and other services' are not unconstitutional. They do not involve the taking or holding of lands for private purposes. Property leased will still be

devoted to the public purpose of the turnpike, to which these services are wholly subordinate." As the authority took the property for a public purpose, and to serve the Turnpike, the taking was valid. See 452, *supra.*

The plaintiffs further assert that the taking exceeded the scope of authority because a park and ride facility is not a service contemplated by the enabling legislation. We again disagree. In *Ballantine* v. *Falmouth*, 363 Mass. 760 (1973), the plaintiffs challenged a taking by the town to provide parking facilities for the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority, which provided a ferry service from the mainland to the islands of Martha's Vineyard and Nantucket. The court held that "[s]everal principles of law seem clear and are not challenged by the parties. The provision of off street parking facilities is a public purpose for which land may be taken by a municipality, even if that land is being devoted to public parking by its private owner." *Id.* at 763. See *Tate* v. *Malden*, 334 Mass. 507, 508 (1956).

Here it is apparent that a park and ride facility serves the public by providing a meeting place where commuters can park their individual cars and travel together in a single car for the remaining duration of their commute. Plaintiffs have no hope of showing that a taking for a park and ride facility is beyond the scope of the enabling legislation.

*Counts VI, IX, X:* The plaintiffs based these allegations of bad faith taking on their factual allegation that the true reason the authority took the property was to confer a private benefit on the owners of the adjacent parcel "9/90 Development."

The purpose of a taking by eminent domain is subject to judicial review. *Luke* v. *Massachusetts Turnpike Authy.*, 337 Mass. 304, 308 (1958). "[I]f the taking is for a public purpose, the necessity for the appropriation is not a judicial question, but a legislative one, irrespective of whether the determination was by the Legislature or by public officers to whom the Legislature has delegated the power." *Ibid.* However, "the power of eminent domain cannot be contracted or bartered away." *Robie* v. *Massachusetts Turnpike Authy.*, 347 Mass. 715, 727 (1964). A taking by eminent domain, proper on its face, may be invalid if the

taking was made in bad faith. *Pheasant Ridge Assocs. Ltd. Partnership* v. *Burlington*, 399 Mass. 771, 775 (1987).

Here, on a showing that property ·was taken solely or dominantly to benefit a private party owning adjacent property, the taking can be held to have been undertaken in bad faith, and the plaintiffs would be entitled to relief. See *Pheasant Ridge Assocs. Ltd. Partnership* v. *Burlington, supra* at 775-777; *Benevolent & Protective Order of Elks, Lodge No. 65* v. *Planning Bd. of Lawrence*, 403 Mass. 531, 551 (1988).

We examine the legal sufficiency of a complaint, when challenged by a motion to dismiss under Mass.R.Civ.P. 12(b)(6), under the well settled principles that (1) the plaintiff's factual allegations must be taken as true; (2) all reasonable inferences that can be drawn therefrom must be viewed in a light most favorable to the plaintiff; and (3) a complaint is sufficient "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Eyal* v. *Helen Broadcasting Corp.*, 411 Mass. 426, 429 (1991), quoting from *Nader* v. *Cintron*, 372 Mass. 96, 98 (1977). Even under the generous reading of a complaint urged by Mass.R.Civ.P. 12(b)(6), a complaint alleging bad faith has been held inadequate unless accompanied by some allegations of specific fact supporting the general allegation.[4] We see no reason that this additional requirement should not apply to complaints alleging bad faith in eminent domain takings. See *Cheney* v. *Automatic Sprinkler Corp. of America*, 377 Mass. 141, 150 (1979) ("In the absence of allegations of fact indicating . . . that the defendant acted in bad faith . . . , the complaint and the more definite statement fail to allege a claim on which relief can be granted"); *Harhen* v. *Brown*, 431 Mass. 838, 839 (2000) (failure "to allege facts of bad faith" supported granting the defendant's motion to dismiss); *Berman* v. *Drake Motor Lines, Inc.*, 6 Mass. App. Ct. 438, 443 (1978) (plaintiff's allegation failed to state a claim "because the plaintiff's allegation was . . . merely 'a conclusory statement, made without any allegations of facts' " [citation omitted]). We conclude here that the

---

[4]See Mass.R.Civ.P. 9(b), 365 Mass. 751 (1974); Smith & Zobel, Rules Practice § 9.2 (1974 & Supp. 2001); *Catamount Constr., Inc.* v. *Pepperell*, 7 Mass. App. Ct. 911, 912 (1979).

plaintiffs' complaint satisfies this specificity requirement and thus survives the motion to dismiss.

Facts indicating a bad faith or an arbitrary or capricious taking may include facts indicating (1) the government body taking the property did not follow its "usual practices" to conduct the taking; and (2) that the site chosen had not been considered at all or not considered suitable for the stated purposes given for the taking. *Pheasant Ridge Assocs. Ltd. Partnership* v. *Burlington*, 399 Mass. at 778; *Benevolent & Protective Order of Elks, Lodge No. 65* v. *Planning Bd. of Lawrence*, 403 Mass. at 552-553.

The plaintiffs alleged in count IV of the complaint that, although not statutorily required under G. L. c. 79, the authority violated common procedural safeguards usually conducted before taking property by eminent domain.[5] Further, the plaintiffs alleged that the property was not, according to technical studies of which the authority was aware, suitable to provide the capacity regarded necessary to satisfy the requirements of the Federal Clean Air Act even though satisfaction of that act was the stated purpose the authority gave for acquiring the property for a park and ride facility. The plaintiffs allege, in count X of the complaint, that in addition to its being aware of this failure, the authority was also aware of alternative parcels of land that would satisfy such requirements.

These factual allegations tend to support the plaintiffs' ultimate allegation that the sole or dominant motive for taking the property was "as a conduit" "to confer a benefit upon the private owners of the 9/90 Development," rather than for a necessary park and ride facility to benefit the public. We conclude that, even if these allegations seem implausible, or if we doubt that they may be proved, they provide sufficient factual support for the claims of bad faith, improper purpose, and arbitrary and capricious use of the eminent domain power to survive a motion to dismiss under 12(b)(6) as a matter of law. Contrast *Kurker* v. *Hill*, 44 Mass. App. Ct. 184, 193 (1998) (a

---

[5]The plaintiffs claim such common safeguards include conducting public hearings, contacting the owners of the property to discuss the purchase or relocation of the project, or conducting independent appraisals before setting the value of the property.

"complaint [that] parrots the requisite elements of the claim but lacks factual support for . ·. . wholly conclusory allegations," will be properly dismissed).

If the sole, or at least the dominant, reason for taking the property was to build a park and ride facility for the benefit of the public, then the taking would be proper. On a motion to dismiss, however, it is not necessarily fatal to a proper statement of the bad faith or capricious claims, that the plaintiffs allege that the authority built and utilized in some small way a park and ride facility on the property. Compare *Benevolent & Protective Order of Elks, Lodge No. 65* v. *Planning Bd. of Lawrence,* 403 Mass. at 551 (a taking is not void "merely because [a] disposition of that land indirectly benefits private individuals[,]" so long as the benefits to the private individuals "are incidental to the main purpose of the plan," which is to "achieve the public purpose").

The Supreme Judicial Court has cautioned that, "[a]lthough under [Mass.R.Civ.P. 12(b)(6)] reliance on inferences or conclusory statements may not necessarily render a pleading defective, the pleader may be well advised to avoid undue reliance on inferences which can only invite a motion to dismiss for failure to state a claim on which relief can be granted." *Slaney* v. *Westwood Auto, Inc.,* 366 Mass. 688, 701 (1975). The plaintiffs will need more than just these allegations to survive a motion for summary judgment. "We have held firmly to the principle that well pleaded cases and motions for summary judgment supported by affidavits and other materials serve a 'salutary purpose' which should not be 'set at naught' where the opposing party merely raises 'vague and general allegations of expected proof.' *Albre Marble & Tile Co.* v. *John Bowen Co.,* 338 Mass. 394, 397 (1959). . . . We consider this approach to summary judgment motions to be correct under [Mass.R.Civ.P. 56, 365 Mass. 824 (1974)] as well . . . ." *Community Natl. Bank* v. *Dawes,* 369 Mass. 550, 555-556 (1976). See *Framingham Clinic, Inc.* v. *Zoning Bd. of Appeals of Framingham,* 382 Mass. 283, 299 (1981). With this caution, we reverse the dismissal of counts VI, IX, and X of the complaint and remand

those counts to the Superior Court for further proceedings. We affirm the dismissal of the remaining counts.[6]

*So ordered.*

---

[6]As counts III-V, VII-VIII, and XII-XIV of the plaintiffs' first amended complaint were not discussed in either the plaintiffs' or the authority's briefs or oral arguments on appeal, we deem any issues as to these counts waived.