Fabricant, J.
The background of this case appears in HTA Limited Partnership v. Massachusetts Turnpike Authority, 51 Mass.App.Ct. 449 (2001). The Appeals Court there remanded the case for further proceedings on counts alleging that the defendant Authority’s taking of the plaintiffs’ property was made in bad faith, “solely or dominantly” to confer a benefit on the private owners of the so-called “9/90 Development,” rather than for the stated public purpose of a park and ride facility. Id. at 454-55, 457-58. Support for such a claim, the Court noted, could include evidence that the taking authority had departed from its usual practices, or that it had previously considered the site unsuitable, or not considered it, for the stated purpose. Id. at 456. The Court further noted allegations of the complaint that, if proved, would assist the claim, including that the defendant had departed from common procedural safeguards, and that technical studies known to the Authoriiy had shown the site to be unsuitable for the purpose, while the Authority was aware of alternative sites that would have met its goals. Id. The Court cautioned that such allegations, while sufficient to withstand a motion to dismiss, would not suffice at the stage of summary judgment.
That stage has now arrived. After hearing, and having examined the entire record provided in the light most favorable to the plaintiffs, the Court concludes that the plaintiffs have no prospect of proving that the sole or dominant purpose of the taking was anything other than the stated public purpose of a park and ride facility. Accordingly, the defendant’s motion for summary judgment will be allowed.
The Court’s review of the record, and consideration of the plaintiffs’ arguments, has been substantially hampered by the plaintiffs’ approach to presenting the facts, a task governed by Superior Court Rule 9A(b)(5). As required by that rule, the defendant has provided a concise statement setting forth in short numbered paragraphs the subsidiary facts that it contends are undisputed. The plaintiffs’ response admits virtually all the facts stated, but goes on in each paragraph to assert a series of qualifications, arguments, and conclusions, with reference to evidentiary material purporting to provide support. This approach does not comply with the rule, either with respect to disputing facts asserted by the moving party or with respect to asserting additional facts. See Dziamba v. Warner & Stackpole LLP, 56 Mass.App.Ct. 397, 398-401 (2002). Nevertheless, the Court has reviewed those of the cited materials that have been provided.[1] That review reveals that virtually none of the referenced material supports the proposition for which it is cited.
As to the facts asserted by the defendant, the plaintiffs purport to dispute three. With respect to each of paragraphs 7 and 10, the asserted dispute involves a minor discrepancy in dates, which is resolved in each case by reference to documents provided. As to paragraph 13, the plaintiffs dispute the assertion that the Authority presently intends to expand the park and ride lot on the site to 250 spaces. Among the references provided are none that address the present time, but some that reflect consideration in 1997 of proposals that would have reduced the size of the lot. The defendant’s consideration of such proposals in 1997 sheds light neither on its present intentions nor on its intentions at the time of the taking, which is the issue presented in this case. The record thus presents no genuine dispute of material fact.
What the record shows, in substance, is the following. In the early 1990s, the Authority engaged a consultant to evaluate various approaches to reducing the number of vehicles using the Turnpike during peak traffic hours, so as to meet regulatory requirements under the Clean Air Act. The consultant, after gathering and evaluating data, concluded that a park and ride program would meet the need, and projected demand in the area of interchange 12 at 250 spaces. The plaintiffs’ expert disagrees with the consultant’s methods, and with the conclusions it drew from available data. The Authority, however, accepted those conclusions, and undertook to establish park and ride lots at most turnpike interchanges.
With respect to interchange 12, Authority personnel considered the site and one other potential location, and selected the site. The site had a significant drawback, in that access between the site and the Turnpike was less than direct, but no evidence indicates that the alternative location considered, or any other potential location, was better in this regard, still less that any alternative was better or even equal financially or in other respects. The plaintiffs refused to sell the site to the Authoriiy, expressing only a willingness to consider a lease “on my terms.” The Authority took the site by eminent domain in August of 1994. It did not conduct a public hearing prior to the taking, nor does any evidence indicate any practice of doing so.
Immediately after the taking, the Authority established a park and ride lot for 110 vehicles. The projected 250 users did not materialize, and the lot has been under-utilized since its inception. In 1997, some three years after the taking, a developer proposed to the Authority an arrangement under which part of the lot would be used for access to the adjacent “9/90 Development." The Authoriiy engaged in negotiations over that proposal. No evidence indicates that those negotiations ever culminated in any agreement.
As to the allegations cited by the Appeals Court as potentially supporting the claim, the record reveals a *592 lack of supporting evidence. Nothing in the record indicates that the Authority departed from its usual practices or from common procedural safeguards; indeed the evidence is devoid of any basis on which a fact finder could identify any procedures usually employed by the Authority or by other taking authorities in Massachusetts that were not employed in this case. As to the Authority’s consideration of the site, the only evidence is that its staff considered this site, along with one other, from the outset of its planning process for a park and ride lot at interchange 12; nothing suggests that the Authority ever considered the site unsuitable for the purpose, despite recognition of its drawbacks. Nor does any evidence indicate that any technical studies had shown the site to be unsuitable for the purpose. That the plaintiffs expert disagrees with the conclusions reached by the Authority’s consultant does not provide such evidence. The evidence offered fails to support plaintiffs claim that the Authority took the site in bad faith, for any purpose other than that stated, and the Authority is entitled to judgment as a matter of law on the two counts of the second amended complaint that are predicated on that claim, counts I and II.
Count III alleges that the taking was arbitrary and capricious. In the eminent domain context, that allegation means nothing more than that the taking was for a purpose not authorized by law. See Chandler v. County Commissioners of Nantucket County, 437 Mass. 430, 434 (2002). As discussed, the record here establishes otherwise. Moreover, the proper procedural mechanism for raising that allegation would be an action in the nature of certiorari, pursuant to G.L.c. 249, §4, under which the Court would review the record of the administrative action, without ajury, and without receiving evidence outside that record. See id. The plaintiff has not asserted a claim for such review, nor did he meet the sixty-day filing deadline for such an action. Accordingly, the defendant is entitled to judgment as a matter of law on Count III.
Count IV of the Second Amended Complaint, added after remand from the Appeals Court, alleges that the taking was an “unconstitutional application” of the Authority’s statutory eminent domain power “because Turnpike travelers must leave the Turnpike road in order to utilize the Subject Property.” The theory underlying this claim, as explicated in the plaintiffs arguments in support of his cross motion for partial summary judgment, is that the Authority’s enabling act “impliedly authorizes takings only of directly accessible abutting land." No such limitation appears in the language of the enabling act, nor does either case law or common sense support its implication.
The pertinent provisions of the Authority’s enabling act appear at sections 5(f), (k), and (p) of chapter 354 of the act of 1952. These provisions authorize the Authority:
(f) To acquire sites abutting on the turnpike and to construct or contract for the construction of buildings and appurtenances for gasoline stations, restaurants and other services and to lease the same for the above purposes in such manner and under such terms as it may determine;
(k) To acquire ... by the exercise of the power of eminent domain . . . any fee simple absolute or any lesser interest in such private property as it may deem necessary for carrying out the provisions of this act, including any fee simple absolute in, easements upon, or the benefit of restrictions upon, abutting property to preserve and protect the turnpike . . .
(p) To do all acts and things necessary or convenient to carry out the powers expressly granted in this act.
Soon after its enactment, the Justices of the Supreme Judicial Court opined that the Act did not exceed the Legislature’s power to delegate, and did not violate the restrictions in article ten of the declaration of rights on takings for highway purposes of “more land and property than are needed for the actual construction of such highway or street.” See Opinion of the Justices, 330 Mass. 713, 719-25 (1953). In reaching these conclusions, the Court noted the important differences between the Turnpike and more conventional roads, and the consequent necessity for the Turnpike to have broad powers to provide a range of facilities and services beyond the road itself. See id. at 723-25. In keeping with that opinion, the Appeals Court in this veiy case has recognized that the provision of a park and ride lot is a legitimate public purpose authorized by the enabling act. See HTA Limited Partnership v. Massachusetts Turnpike Authority, 51 Mass.App.Ct. at 453-54.
The statutory language limits the Authority’s taking power to abutting property, taken for the specified purposes. Within those limitations, the power granted is broad, with discretion to evaluate necessity and convenience conferred on the Authority, rather than on any reviewing Court. No limitation to directly accessible property appears. Nor would such a limitation be consistent with the apparent purposes of the grant of powers to the Authority. The Authority could reasonably conclude that parking facilities located outside the direct confines of the Turnpike offer practical and safety advantages: travel lanes and ramps need not be disrupted by vehicles turning in and out of parking areas, and users need not pay tolls to enter, and then later travel to the next interchange to exit.
The plaintiff suggests that the use of this site as a park and ride lot does not serve to preserve and protect the Turnpike, because the lot is open to the public generally, and not limited to Turnpike users. Nothing *593 in the enabling act, however, compels the Authority to limit use of its facilities to users of the Turnpike, as long its purpose in establishing the facilities is to serve interests of the Turnpike. As discussed supra, the record before the Court establishes beyond dispute that the Authority’s purpose in taking the site was to establish a park and ride lot for use by Turnpike commuters, so as to reduce the number of vehicles using the Turnpike. The Appeals Court has already held that purpose to be authorized by the enabling act. Accordingly, the Authority is entitled to judgment as a matter of law on Count IV.
Count V of the Second Amended Complaint, also added after remand, alleges that the land taken “consists of more land than was needed to construct and operate the ‘park and ride facility,’ ” and that the Authority “knew or should have known that it took more land . . . than it needed.” In support of this allegation, the plaintiffs rely on the opinion of their expert that the site is bigger than needed for 250 parking spaces, and that “realistic demand” was far less than that number. This evidence fails to support the allegations, for the same reasons discussed supra; that the plaintiffs’ expert disagrees with the Authority’s determination of how much land to take does not render that determination improper. The legislature has delegated to the Authority, not to the plaintiffs or the Court, the discretion to determine its needs. See City of Boston v. Talbot, 206 Mass. 82, 90 (1910) (transit authority’s “exercise of delegated legislative authority and its final judgment in determining what property it was expedient to take to accomplish the strictly public purpose for which the taking was made are not subject to revision”). Nothing in the record suggests that the Authority did not exercise its discretion in good faith.[2]
The plaintiffs’ memoranda expand on the allegations of count V, contending that the Authority took not only more acreage, but also a greater interest than necessary. The plaintiffs argue that a leasehold would have sufficed, citing evidence that the Authority leased land for park and ride lots in other locations. This aspect of the argument fails for the same reasons already discussed, and for the additional reason that nothing in the record indicates any terms on which the plaintiffs would have leased the land, beyond plaintiff Hanna’s reference to “my terms.” Even if the Court were empowered to second-guess the Authority’s decision to take the land rather than lease it, the Court could hardly do so without a factual basis for comparison. The defendant is entitled to judgment as a matter of law on count V.
CONCLUSION AND ORDER
For the reasons stated, the Massachusetts Turnpike Authority’s Motion for Summary Judgment is ALLOWED, and the Plaintiffs’ Cross-Motion for Partial Summary Judgment is DENIED.

In some instances the plaintiffs have cited pages of deposition transcripts that they have not provided.

Whether a taking authority’s exercise of discretion as to the amount of land to take might be subject to judicial review for abuse of discretion, in an action in the nature of certiorari, is a question not presented in this case; the plaintiffs did not seek such review, which, as noted supra, would have been limited to the record of the Authority’s proceedings.