Lichoulas *v.* City of Lowell.

JAMES T. LICHOULAS, JR., individually & as trustee,[1] *vs.* CITY OF LOWELL.

No. 09-P-1448.

Suffolk. March 8, 2010. - November 17, 2010.

Present: TRAINOR, RUBIN, & FECTEAU, JJ.

*Land Court,* Jurisdiction. *Jurisdiction,* Land Court. *Eminent Domain,* Authority for taking. *Public Utilities,* Federal Power Act.

In an action in Land Court brought by a plaintiff challenging the validity of a city's eminent domain taking of the plaintiff's dormant hydroelectric power plant, the Land Court erred in dismissing, for want of subject matter jurisdiction, the plaintiff's claim that the taking violated G. L. c. 164, §§ 35 and 37, which was properly before the Land Court as a claim in equity in which a right, title, or interest in land was involved [275-278]; however, the judge correctly concluded that the Land Court was without jurisdiction to consider the plaintiff's claim involving the Federal Power Act, 16 U.S.C. §§ 791a et seq., given that exclusive jurisdiction over claims of violations of that act rests in the Federal courts [278-279].

CIVIL ACTION commenced in the Land Court Department on March 23, 2009.

A motion to dismiss was heard by *Karyn F. Scheier,* J.

*Brian A. Davis* for the plaintiff.

*R. Eric Slagle* for the defendant.

RUBIN, J. The plaintiff, James T. Lichoulas, Jr. (plaintiff), commenced this action in the Land Court challenging the validity of the city of Lowell's eminent domain taking of the plaintiff's dormant hydroelectric power plant. The Land Court dismissed the complaint for want of subject matter jurisdiction. The plaintiff has appealed.

1. *Background.* In 1986, the plaintiff was licensed by the Federal Energy Regulatory Commission (FERC) to operate the

[1]Of the Appleton Trust, the Appleton Mill No. 5 Parking Trust, the Appleton Mill No. 5 Realty Trust, and the Parcel 291 Realty Trust.

Appleton Trust Project (the project), a hydroelectric power plant, on land comprising 169, 171, 291, 307, and 351 Jackson Street in Lowell (Appleton Mill Property). At some point thereafter, the project ceased operation. By September, 2004, FERC notified the plaintiff that it considered the dormant project to be abandoned, and considered that abandonment to evidence his intent to surrender his license. FERC, however, did not initiate a proceeding to terminate the plaintiff's license at that time.

On April 25, 2006, the defendant, the city of Lowell (city), as part of an urban renewal and revitalization plan, took the Appleton Mill Property by eminent domain. The order of taking cited "the applicable provisions of Massachusetts General Laws, Chapter 79 and Chapter 121B and also Chapter 610 of the Acts of 1967, and of any and every other power granted or implied" as authority for the city's exercise of power. The city notified FERC of the taking and requested that it inspect the project. On March 21, 2007, FERC issued a "Notice of Termination by Implied Surrender and Soliciting Comments, Protests, and Motions to Intervene," initiating proceedings to terminate the plaintiff's Federal license.

2. *Prior litigation.* The plaintiff initially brought suit in the United States District Court for the District of Massachusetts, where he sought a return of the property and a declaration that the city's taking of the project violated the Federal Power Act (FPA), 16 U.S.C. §§ 791a et seq., which, he claims, prohibits the taking by eminent domain of a Federally licensed power plant by a municipality that is not competent to, nor actually undertakes to, maintain and operate the plant thereafter (Federal court FPA claims). The plaintiff alternatively sought, under that court's supplemental jurisdiction, compensation for the taking pursuant to G. L. c. 79, § 14 (Federal court compensation claim).

The Federal District Court dismissed the complaint, without prejudice to refiling, on March 31, 2008. Lichoulas *vs.* Lowell, U.S. Dist. Ct., No. 07-10725-RWZ (D. Mass. March 31, 2008). That court concluded that "the validity of the plaintiff's license lies at the heart of this case," and that resolution of the plaintiff's claims should therefore await conclusion of the FERC proceedings at which the status of the plaintiff's license would be

determined. *Id.*, slip op. at 4. The court also held that, to the extent any of the parcels that made up the Appleton Mill Property were not part of the project, a claim for just compensation properly belonged in State court. *Id.*, slip op. at 5. See *Williamson County Regional Planning Commn.* v. *Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985).

While the plaintiff's appeal to the United States Court of Appeals for the First Circuit was pending, on September 18, 2008, FERC concluded its proceedings by finding that the plaintiff had impliedly surrendered his Federal license by failing to operate the project, and ordered the license terminated. See *Lichoulas* v. *Lowell*, 555 F.3d 10, 12 (1st Cir. 2009), citing *Lichoulas*, 124 F.E.R.C. ¶ 61,255 (Sept. 18, 2008). The plaintiff appealed the order terminating his license to the United States Court of Appeals for the District of Columbia Circuit. *Ibid.*

On January 30, 2009, the United States Court of Appeals for the First Circuit affirmed the Federal District Court's judgment of dismissal without prejudice. *Id.* at 14. The court stated that, under the circumstances, "the district court was entitled, as a matter of judicial judgment, to await the outcome of a FERC proceeding that likely would eliminate any warrant for intervention by a federal court." *Ibid.* Noting FERC's termination order, and the plaintiff's appeal therefrom, the court explained that "the evident prospect that FERC would revoke the license made clear that the federal interest, such as it was, would likely be mooted; and any objection to the taking, or deficiency in adequate compensation, could be and preferably is to be done in state proceedings." *Id.* at 13.

3. *This lawsuit.* On March 23, 2009, the plaintiff brought this action in the Land Court.[2] The complaint did not, however, seek compensation for the taking or any portion thereof. As the plaintiff explains, "the only relief . . . requested in this case is an order directing the City to return title to, and control of, the Appleton

---

[2]The defendant argues that the decision of the Federal District Court was res judicata to this action. " 'Dismissal without prejudice' is a dismissal that does not 'operate as an adjudication upon the merits,' [Fed. R. Civ. P.] 41(a)(1), and thus does not have a res judicata effect." *Cooter & Gell* v. *Hartmarx*, 496 U.S. 384, 396 (1990). See *Mancuso* v. *Kinchla*, 60 Mass. App. Ct. 558, 564 (2004) (Federal res judicata rules control preclusive effect in State court of a Federal court judgment).

Trust Project to" the plaintiff. In this action, the plaintiff asserts that the city failed to comply with the procedural rules set forth in G. L. c. 164, §§ 35 and 37, and that the taking therefore violated State law. He also asserts that this failure made the city incompetent under Massachusetts law to operate and maintain a hydroelectric power plant, and argues, again, that, as a result of that incompetence, the city's taking violates certain provisions of the FPA.[3]

Sections 35 and 37 are contained within a subchapter of c. 164 entitled "Municipal Lighting Plants." Section 35, entitled "Vote of a city to acquire plant," states, "A city *shall not acquire* such a plant until authorized by a two thirds vote of its city council . . . passed in each of two consecutive municipal years and thereafter ratified by a majority of the voters at an annual or special city election" (emphasis added). G. L. c. 164, § 35. Section 37 then sets forth the process by which the town clerk must certify and transmit the records of a vote taken in compliance with § 35 to the Department of Telecommunications and Energy.[4] See G. L. c. 164, § 37. It is one of the plaintiff's contentions that the city did not comply with these procedures.

The FPA states in relevant part: "[T]he right of the United States or any State or municipality to take over, maintain, and operate any project licensed under this chapter at any time by condemnation proceedings upon payment of just compensation is expressly reserved." 16 U.S.C. § 807(a). Under the FPA, a "municipality" is defined as "a city, county, irrigation district, drainage district, or other political subdivision or agency of a State competent under the laws thereof to carry on the business of developing, transmitting, utilizing, or distributing power." 16 U.S.C. § 796(7). It is the plaintiff's second contention that the

---

[3]The defendant contends on appeal that the plaintiff's State-law challenge to the validity of the taking was insufficiently pleaded. The complaint does include only two instances in which the plaintiff makes an allegation of invalidity under Massachusetts law, and it does so without identifying the statutory provision violated. Nonetheless, Mass.R.Civ.P. 8(a), 365 Mass. 749 (1974), requires only "a short and plain statement . . . showing the pleader is entitled to relief." The complaint need not state the correct substantive theory of the case. *Gallant* v. *Worcester*, 383 Mass. 707, 709 (1981). Cf. *Mahoney* v. *Dematteo-Flatiron LLP*, 66 Mass. App. Ct. 903 (2006) (holding that the plaintiff's claim was not waived for failure to cite applicable statute).

[4]Now the Department of Public Utilities. St. 2007, c. 19, §§ 21, 54.

FPA forbids the taking, since the failure to comply with G. L. c. 164, §§ 35 and 37, rendered the city incompetent to "carry on the business of developing, transmitting, utilizing, or distributing power" by use of the power plant taken here.

The Land Court dismissed the action for lack of subject matter jurisdiction pursuant to Mass.R.Civ.P. 12(b)(1), 365 Mass. 755 (1974). It determined, first, that a provision in the FPA, 16 U.S.C. § 825p, conferred on the Federal courts exclusive jurisdiction "to hear disputes arising from the FPA"; and, second, that the plaintiff's allegations that the city failed to follow the prescribed statutory procedures in effectuating the taking could provide the plaintiff no State remedy other than money damages. In the absence of jurisdiction over the claims, the judge also denied the defendant's motion for a memorandum of lis pendens. See G. L. c. 185, § 1(*k*); G. L. c. 184, § 15. It is from the Land Court's dismissal and its denial of the motion for lis pendens that the plaintiff now appeals.

On May 28, 2010, while this appeal was pending, the United States Court of Appeals for the District of Columbia Circuit affirmed the termination by FERC of the plaintiff's license on the ground of implied surrender. *Lichoulas* v. *Federal Energy Regulatory Commn.*, 606 F.3d 769 (D.C. Cir. 2010).

4. *Discussion.* Under its statutory grant, the Land Court has jurisdiction over "[a]ll cases and matters cognizable under the general principles of equity jurisprudence where any right, title or interest in land is involved." G. L. c. 185, § 1(*k*). In determining whether the plaintiff has presented such a case, and therefore whether dismissal was appropriate under rule 12(b)(1), we accept as true all factual allegations of the plaintiff's complaint, as well as any favorable inferences reasonably drawn therefrom, see *Ginther* v. *Commissioner of Ins.*, 427 Mass. 319, 322 (1998). We review questions of law de novo. See *Warner-Lambert Co.* v. *Execuquest Corp.*, 427 Mass. 46, 47 (1998). "A complaint is sufficient against a motion to dismiss if it appears that the plaintiff may be entitled to any form of relief, even though the particular relief he has demanded and the theory on which he seems to rely may not be appropriate." *Sullivan* v. *Chief Justice for Admn. and Mgmt. of the Trial Court*, 448 Mass. 15, 21 (2006), quoting from *Nader* v. *Citron*, 372 Mass. 96, 104 (1977).

a. *Massachusetts law.* "The taking of land from a private owner against his will for a public use under eminent domain is an exercise of one of the highest powers of government." *Devine* v. *Nantucket,* 449 Mass. 499, 506 (2007), quoting from *Lajoie* v. *Lowell,* 214 Mass. 8, 9 (1913). It is a power that resides in the Legislature and passes to municipalities only by explicit delegation. See *Burnham* v. *Mayor & Aldermen of Beverly,* 309 Mass. 388, 389 (1941); *Newton* v. *Trustees of State Colleges,* 359 Mass. 668, 669-670 (1971); *Providence & Worcester R.R. Co.* v. *Energy Facilities Siting Bd.,* 453 Mass. 135, 141 (2009) ("The power of eminent domain 'exists only in case the Legislature has delegated that power in express terms or by necessary implication; it is not to be inferred from vague and doubtful general phrases.' *Trustees of Reservations* v. *Stockbridge,* 348 Mass. 511, 514 [1965]"). The failure of a municipality to strictly comply with the statutory requirements of, or conditions precedent to, such a delegation of power voids any taking attempted thereunder. See *Burwick* v. *Massachusetts Hy. Dept.,* 57 Mass. App. Ct. 302, 307-308 (2003), and cases cited. "Where the statutory requirements for an order of taking have been neglected, no subsequently entered order may cure the defect." *Id.* at 309.

Consequently, it is well established in this Commonwealth that one whose private property has been taken by an exercise of the power of eminent domain may bring an action in equity to challenge the validity of that taking. See, e.g., *McAuliffe & Burke Co.* v. *Boston Housing Authy.,* 334 Mass. 28, 30-31 (1956). Such a challenge may be undertaken separate and apart from the statutory right of action for money damages under G. L. c. 79, § 14. See, e.g., *Raimondo* v. *Burlington,* 366 Mass. 450, 452 (1974). Indeed, c. 79 clearly envisions actions seeking each remedy. See G. L. c. 79, §§ 16, 18 (separately establishing limitations periods for challenges to validity and for petitions for damages).

One basis on which such suits have successfully been brought is for "fail[ure] to comply with the procedural requirements of G. L. c. 79." *Cumberland Farms, Inc.* v. *Montague Economic Dev. & Industrial Corp.,* 38 Mass. App. Ct. 615, 618 (1995) (citation omitted). These requirements include the requirement that an order of taking may be adopted only by a municipality

"having first complied with all the preliminary requirements prescribed by law." G. L. c. 79, § 1. *Chwalek* v. *Pittsfield*, 3 Mass. App. Ct. 759, 760 (1975). The plaintiff's claim of a violation of G. L. c. 164, §§ 35 and 37, fits comfortably within that statutory language, and as the question presented by the plaintiff is whether as a matter of law the city exceeded its lawful authority by taking his property, the plaintiff has appropriately sought injunctive relief.[5] The plaintiff's claim was thus properly brought before the Land Court as a claim in equity in which a "right, title or interest in land is involved." See G. L. c. 185, § 1(*k*). The motion to dismiss the claim therefore should not have been granted.

The city contends that the taking at issue is not within the scope of c. 164, §§ 35 and 37, and that the taking was therefore properly authorized, both because the project was not functional when taken and was therefore not a "plant[] for the manufacture or distribution of . . . electricity" within the meaning of G. L. c. 164, § 34, and because the city does not intend to maintain or operate the project for the manufacture or distribution of electricity. (The city did assert at oral argument its authority to sell the subject property to, e.g., a developer who would use the plant for electrical power generation.)

These arguments do not go to the Land Court's subject matter jurisdiction, and we express no opinion on them. "Subject matter jurisdiction is 'jurisdiction over the nature of the case and the type of relief sought.' " *Middleborough* v. *Housing Appeals Comm.*, 449 Mass. 514, 520 (2007), quoting from Black's Law Dictionary 870 (8th ed. 2004). The arguments raised by the defendant go to the substantive elements of the plaintiff's case. In light of its disposition of the case on jurisdictional grounds, the Land Court did not address the defendant's claim that the complaint failed to state a claim upon which

---

[5] The defendant argues that any right to enforce the provisions of c. 164 is vested in the Department of Public Utilities by G. L. c. 164, § 69H. But that section does not grant exclusive enforcement authority. Nor does a statutory extension of standing to one who is not otherwise injured normally imply a denial of standing to those who are. Cf. *Maffei* v. *Roman Catholic Archbishop of Boston*, 449 Mass. 235, 245 (2007), cert. denied, 552 U.S. 1099 (2008) (statutory grant of standing to Attorney General to enforce charitable trusts does not preclude private suits by those with "individual stakes in the dispute").

relief could be granted, to which the defendant's contentions and the subsidiary legal questions they involve may relate, and we decline to address it here. The defendant may seek to have the Land Court address that claim in the first instance on remand. See *Middleborough* v. *Middleborough Gas & Elec. Dept.*, 422 Mass. 583, 588-589 (1996).[6]

b. *Federal law.* The judge also concluded that the Land Court was without jurisdiction to consider the plaintiff's claim involving the FPA. Section 825p of 16 U.S.C. provides:

> "The District Courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder."

Because the Federal courts have exclusive jurisdiction over claims of violations of the FPA, dismissal of the complaint insofar as it sought relief for such a violation was proper. The plaintiff points to language in the First Circuit decision that in his Federal case he was "simply seeking to have the federal court derail a state takings proceeding in which — given the Supremacy Clause — he could presumably raise his objections." *Lichoulas* v. *Lowell*, 555 F.3d at 13. This, however, does not amount to a determination, contrary to the plain language of the statute, that, indeed, FPA claims may be brought before State courts. While we would be concerned if the plaintiff were told by both the Federal court and the State court that only the other could hear his claim, at the end of the day the holding of the First Circuit was that the Federal District Court did not err by dismissing without prejudice his FPA claim, allowing him to refile it when the FERC proceedings were final, regardless of their outcome.

To the extent the Land Court's order dismissed the plaintiff's State law cause of action, it is reversed; to the extent it dismissed the plaintiff's FPA action, it is affirmed. The order denying the

---

[6]We express no opinion on what the subsidiary questions will be, something that will turn on the manner in which the parties litigate the case on remand, or on how they should be answered.

motion for a memorandum of lis pendens, which turned upon the dismissal of the action, is vacated, although we express no opinion on the propriety of endorsement of the memorandum, an issue which may be considered by the Land Court on remand.

*So ordered.*