# United States Court of Appeals
## For the First Circuit

No. 13-1022

PATRICK J. HANNON,

Plaintiff,

v.

CITY OF NEWTON,

Defendant.

UNITED STATES OF AMERICA,

Interested Party, Appellant,

v.

COMMONWEALTH OF MASSACHUSETTS;
RITA S. MANNING,

Interested Parties, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Lynch, Chief Judge,
Thompson and Kayatta, Circuit Judges.

Anthony T. Sheehan, Attorney, Tax Division, Department of
Justice, with whom Teresa E. McLaughlin, Attorney, Tax Division,
Department of Justice, Kathryn Keneally, Assistant Attorney
General, and Carmen M. Ortiz, United States Attorney, were on
brief, for appellant.
Thomas J. Flannagan, with whom MacLean Holloway Doherty

<u>Ardiff & Morse, P.C.</u> was on brief, for appellee.

_____

February 28, 2014

_____

**LYNCH, <u>Chief Judge</u>**.  This case presents an issue of first impression concerning the authority under federal law of the Internal Revenue Service to discharge a portion of its tax liens on a piece of real property taken by eminent domain in exchange for payment from that taking while asserting the remaining value of its liens on any proceeds that the taxpayer obtains in a state post-taking suit for undercompensation damages.  The Internal Revenue Code, 26 U.S.C. § 6325(b)(2)(A), gives the IRS discretion to discharge property from a tax lien if the IRS is paid an amount, "which shall not be less than the value" of its interest in that property.  We conclude that the IRS discharge under this provision did not surrender the government's tax lien on the proceeds of the taxpayer's post-taking suit.  We reverse the district court's determination to the contrary.  <u>Hannon</u> v. <u>City of Newton</u>, 820 F. Supp. 2d 254, 258, 261 (D. Mass. 2011).

We quickly summarize both the issue and our conclusions.  In the spring of 2007, Patrick J. Hannon owed the United States over $4 million for unpaid taxes, and the IRS held tax liens for that sum against his property, including a parcel of land he owned at 20 Rogers Street in Newton, Massachusetts.  In March 2007, the City of Newton, seeking to take the 20 Rogers Street property by eminent domain, asked the IRS to assist it by discharging that parcel from tax liens, thus avoiding any question as to Newton's power to take the property free of those liens.  On May 4, 2007,

-3-

the IRS discharged that specific parcel of land (20 Rogers Street) from its tax lien under 26 U.S.C. § 6325(b)(2)(A) in a Certificate of Discharge. That Certificate expressly stated that it "sav[ed] and reserv[ed] . . . the force and effect of said tax lien against and upon all other property or rights to property to which said lien is attached, wheresoever situated."

Three days later, on May 7, 2007, Newton paid $2.3 million to take Hannon's property at 20 Rogers Street by eminent domain. The IRS had authorized the tax lien discharge on 20 Rogers Street upon its receipt of $57,214.55, which was its estimate of what would remain of the $2.3 million paid by Newton after the mortgagee, a senior creditor, was paid in full.

Following the taking, on November 10, 2008, Hannon exercised his statutory right under Massachusetts eminent domain law to sue Newton in state court, claiming that Newton had not sufficiently compensated him for taking his property. See Mass. Gen. Laws ch. 79, § 8A. He was awarded $420,000 as damages for undercompensation on July 6, 2010. Both the government[1] and Rita S. Manning, a lower-priority creditor who had obtained a judgment against Hannon, intervened in this land damages suit and asserted priority to receive the damages award. The government removed the

---

[1] Although the IRS issued the Discharge Certificate at issue in this case, the federal government, not the IRS, intervened in Hannon's land damages suit because the IRS holds tax liens "in favor of the United States." 26 U.S.C. § 6321.

-4-

case to federal court, and both the government and Manning moved for summary judgment on the question of whose lien had priority. The district court entered summary judgment in favor of Manning, holding that the IRS's decision to discharge 20 Rogers Street from federal tax liens in exchange for payment from the taking also meant the government had relinquished any tax lien on the later damages award.

There is no dispute that before the taking and the filing of the IRS Certificate, Manning's judgment lien was junior to the government's tax lien. The question of law before us is whether the IRS Certificate issued under § 6325(b)(2)(A), read in light of § 6325(b)(3), released or abandoned any claims the IRS had on the post-taking proceeds awarded to the taxpayer under Mass. Gen. Laws ch. 79, § 8A. We hold the IRS lien on those post-taking proceeds is valid and so senior. As a result, we reverse and direct the district court to enter summary judgment in the government's favor.

I.

A.      The Discharge of the Real Property at 20 Rogers Street from Federal Tax Liens

On August 23, 2002, Hannon purchased a 1.5 acre beachfront residence located at 20 Rogers Street in Newton, Massachusetts for $3,000,000. That same day, Merrill Lynch Credit Corp. recorded its purchase money mortgage in the amount of $1,950,000 against the property.

Meanwhile, Hannon never paid his federal income tax and other federal taxes assessed against him for the years 1999, 2000, and 2001, even after the IRS had issued a notice and demand for payment of those taxes. Due to this outstanding tax liability, the IRS recorded notices in February 2003 of federal tax liens against Hannon's real property in the Middlesex County Registry of Deeds for taxes owed from years 1999 to 2001, totaling $5,447,154. See Mass. Gen. Laws ch. 36, § 24 ("Notice of a federal tax lien . . . on any real property or fixtures shall be filed with the register of deeds of the county in which such real property or fixtures are situated."). Hannon's Newton, Massachusetts property is located in Middlesex County.

The IRS also recorded notices, in late January and early February 2003, of federal tax liens against Hannon's personal property for the same amount in the District Court for the District of Massachusetts.[2]

About two years later, on March 17, 2005, Manning obtained a judgment against Hannon in the amount of $103,333.33. On June 9, 2005, she obtained an execution for that amount against Hannon's "goods, chattels or land," which she recorded at the

---

[2] The Internal Revenue Code directs the IRS to file notices of federal tax liens against personal property in the District Court for the judicial district in which the personal property is located whenever state law has not designated a different filing forum, as is the case in Massachusetts. See 26 U.S.C. § 6323(f)(1)(B).

Middlesex Registry of Deeds on June 28, 2005. The IRS liens were obviously recorded first.

In 2007, Newton sought to take Hannon's beachfront property on 20 Rogers Street by eminent domain. Newton intended to fix an unstable retaining wall on the property that abutted Newton's public beach area and that posed a public safety risk to swimmers. As a result, on March 26, 2007, Newton submitted an application to the IRS to discharge 20 Rogers Street from the federal tax liens. Newton informed the IRS that it was waiting for the IRS to approve the discharge before Newton's Board of Aldermen convened for a final vote on the draft order of taking.

Newton's application for a discharge certificate complied with the IRS requirements that it: a) describe the property from which it sought to remove the federal tax lien; b) provide the address of the real property; c) identify the basis for the discharge under 26 U.S.C. § 6325; and d) submit a professional appraisal of the property completed by a disinterested third party.[3] See IRS Form 14135 (June 2010). The appraisal that Newton submitted valued the property at $2.3 million.

The IRS knew that Hannon believed that his property was worth more than Newton's $2.3 million estimate and that Newton had a budget limit of $2.3 million to acquire that property. Under

---

[3] The application form solicits different information from the applicant depending on the subsection of § 6325 that forms the basis of the application.

Massachusetts law, a city is authorized to take privately owned "real estate or any interest therein" by eminent domain. Mass. Gen. Laws ch. 79, §§ 1, 2; Lichoulas v. City of Lowell, 937 N.E.2d 65, 69-70 (Mass. App. Ct. 2010). Upon recording an order of taking, the city acquires title to the property designated in that order, and a right to damages vests in the former owner of the property taken. See Mass. Gen. Laws ch. 79, § 3. As a result, the city is required to pay a "reasonable amount" for the condemned property. See id. § 8A. This amount can be accepted by the owner as either a settlement for all damages owed for the taking or merely as a "payment pro tanto," which preserves the right "to claim a larger sum by proceeding before an appropriate tribunal" for an assessment of damages within three years of the taking. Id. §§ 8A, 16. Hannon took the $2.3 million sum as a payment pro tanto.

To facilitate the taking as Newton requested, the IRS approved the discharge of 20 Rogers Street from federal tax liens on May 4, 2007, well aware that the property might be worth more than the $2.3 million that Newton was able to pay for it, and that there could be a post-taking claim by Hannon for a larger sum. According to the IRS's notes from April 2007, the IRS issued the Discharge Certificate because it believed its tax liens would follow any proceeds that Hannon would obtain if he successfully sued Newton for additional damages.

-8-

The Certificate of Discharge, contained in relevant part in the Appendix, discharged 20 Rogers Street, "[a] certain parcel of land more fully described at the Registry of Deeds," from federal tax liens while "saving and reserving, however, the force and effect of said tax lien[s] against and upon all other property or rights to property to which said lien[s] [are] attached, wheresoever situated." The discharge was issued pursuant to 26 U.S.C. § 6325(b)(2)(A), which permits the Secretary of Treasury to issue a certificate of discharge with respect to a certain property if:

> there is paid over to the Secretary in partial satisfaction of the liability secured by the lien an amount determined by the Secretary, which shall not be less than the value, as determined by the Secretary, of the interest of the United States in the [property] to be so discharged[.]

26 U.S.C. § 6325(b)(2)(A). The sum the IRS obtained from the eminent domain proceeding was only in partial satisfaction of the total tax lien.

The IRS calculated that it would get only $57,214.55 from the initial $2.3 million pro tanto payment after Merrill Lynch, a senior secured creditor, was paid in full, and so the Certificate discharged 20 Rogers Street in exchange for a payment of that sum. As it turned out, on May 11, 2007, Newton paid the IRS $60,692.83 -- more than the $57,214.55 listed in the Discharge Certificate -- because Merrill Lynch's outstanding mortgage balance was less than

-9-

expected.  This allocation accorded with the IRS's belief that it was entitled to all "remaining funds by virtue of its [federal tax liens]" after payment of the senior mortgage, regardless of the specific amount listed in the Discharge Certificate.

Newton issued its order of taking on May 7, 2007, by which it acquired 20 Rogers Street by eminent domain in exchange for a $2.3 million damages award.  The IRS later recorded the Discharge Certificate in the Middlesex County Registry of Deeds on July 17, 2007.  The Certificate was explicit that it applied only to real property located at 20 Rogers Street, so the IRS did not record the Certificate of Discharge in the District of Massachusetts District Court, where it must file tax lien notices for personal property.

B.      Procedural History

On November 10, 2008, a little over a year after the taking, Hannon sued Newton in Middlesex County Superior Court, asserting that the damages award was inadequate compensation for the taking of 20 Rogers Street.  See Mass. Gen. Laws. ch. 79, §§ 8A, 16.  Manning intervened in this land damages suit on May 14, 2010, and the IRS served a notice of levy to attach to any judgment against Newton on May 19, 2010.

On July 6, 2010, the Superior Court entered judgment in favor of Hannon, awarding him $420,000 in damages for undercompensation and $31,245.72 in interest.  On October 4, 2010,

Newton paid $451,649.82 into the registry of the court, and $151,761.73 of the interpleaded funds were paid to Hannon's counsel with the consent of all parties, leaving $299,888.09 to be distributed.

The government moved to intervene in this post-taking undercompensation suit on December 3, 2010. The Superior Court granted the government's motion on December 7, 2010, based on the federal tax liens, and the government later removed the case to federal court. As of November 1, 2010, Hannon's outstanding tax liability totaled $7,307,687. Only the government and Manning timely asserted an interest in these undercompensation damages, and the government moved for summary judgment, asserting that its tax liens had priority over Manning's judgment lien and that the Discharge Certificate only applied to real property located at 20 Rogers Street and not to any additional damages recovered by Hannon. Manning opposed the motion and cross-moved for summary judgment.

In an October 24, 2011 memorandum and order, the district court granted summary judgment in favor of Manning. The district court, in a theory it advanced sua sponte, held that by proceeding under 26 U.S.C. § 6325(b)(2)(A), the IRS had discharged the government's lien on any proceeds from the taking other than $57,214.55, the amount listed in the Discharge Certificate as the value of its interest in 20 Rogers Street. Hannon, 820 F. Supp. 2d

-11-

at 258, 261. It reasoned the government had to elect between § 6325(b)(2)(A) and § 6325(b)(3), and by opting for the former had relinquished its right to any undercompensation damages. The government's failure to comply with the § 6325(b)(3) procedure, the district court reasoned, surrendered the priority of its tax liens to the additional damages paid to the taxpayer in his post-taking suit. Id. at 257-58.

The district court also noted that Massachusetts's eminent domain law treats the right to sue for damages, and any award resulting from that suit, as a substitute for and representation of the land that was taken. Manning had priority because the IRS had discharged its lien on the land, whereas Manning had not. Id. at 259-61. As a result, the district court issued a judgment awarding Manning $103,333.33, the amount of her judgment lien, out of the undercompensation damages with the remainder distributed to the government "as an unsecured creditor." Id. at 261.

On November 21, 2011, the government moved for reconsideration, arguing: (1) that its federal tax liens attached to Hannon's undercompensation damages regardless of its discharge of 20 Rogers Street under 26 U.S.C. § 6325(b)(2)(A); and (2) that the district court had misinterpreted 26 U.S.C. § 6325(b)(3). The district court denied this motion on September 24, 2012. It agreed with the government that the feasibility of a discharge pursuant to

-12-

§ 6325(b)(3) was doubtful in this case.  Hannon v. City of Newton, No. 11-10021-DPW, 2012 WL 4390527, at *6 (D. Mass. Sept. 24, 2012). However, the court explained that this did not alter its conclusion that § 6325(b)(3) means that use of § 6325(b)(2)(A) implicitly discharges any lien on post-taking proceeds.  Id. at *5-*6.  It also reasoned the IRS could have chosen to do nothing at all in the eminent domain proceedings to preserve its rights.  Id. at *6.

The government timely appealed.

II.

This court reviews a grant of summary judgment de novo. Colon v. Tracey, 717 F.3d 43, 49 (1st Cir. 2013).  Neither party points to any disputed facts.  Further, the issues here involve statutory interpretation questions, subject to de novo review.  See United States v. Strong, 724 F.3d 51, 55 (1st Cir. 2013).

A.      Scope of the Discharge of Property from Federal Tax Liens Under § 6325(b)(2)(A)

Under federal law, if a person, such as Hannon, fails to pay federal taxes despite a demand for payment, tax liens "in favor of the United States" automatically attach to all of that person's "property and rights to property, whether real or personal."  26 U.S.C. § 6321.  We emphasize the lien is not only attached to property, but also to "rights to property, whether real or personal."  Id.  "Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes."  Glass City Bank of Jeanette, Pa. v. United States, 326 U.S. 265, 267 (1945).

-13-

As a result, federal tax liens attach to property acquired by the delinquent taxpayer at "any time during the life of the lien." Id. at 268; see also 26 U.S.C. § 6322 ("[T]he lien imposed by [§] 6321 shall arise at the time the assessment [for taxes] is made and shall continue until the liability for the amount so assessed . . . is satisfied or becomes unenforceable by reason of lapse of time.").

Amidst this backdrop, § 6325(b) grants the IRS discretion to discharge specific property from federal tax liens under certain circumstances. See 26 U.S.C. § 6325(b); 26 C.F.R. § 301.6325-1(b). Most discharges occur to facilitate the transfer of encumbered property. The IRS's application process for discharges reflects this reality.

For example, the application form allows either the delinquent taxpayer or the purchaser/transferee of the taxpayer's property to apply for a discharge certificate. Applicants must describe "how and when the taxpayer will be divested of his/her interest in the property" and attach the sales contract and proposed closing statement, if possible. IRS Form 14135 (June 2010). As a result, and consistent with the broad language of § 6321, the purpose of almost every discharge is to carve out of the tax lien only the specific property or part of property which a delinquent taxpayer will no longer own in exchange for payment of that interest which is discharged.

-14-

To that end, § 6325(b)(2) provides in relevant part:

> Subject to such regulations as the Secretary [of Treasury] may prescribe, the Secretary may issue a certificate of discharge <u>of any part of the property subject to the lien</u> if--
>
>> (A) there is paid over to the Secretary in  p a r t i a l satisfaction of the liability secured by the lien an amount determined by the Secretary, which shall not be less than the value, as determined by the Secretary, <u>of the interest of</u> the United States in the part to be so discharged . . . .
>>
>> In determining the value of the interest of the United States <u>in the part</u> to be so discharged, the Secretary shall give consideration to the <u>value of such part</u> and to such liens thereon as have priority over the lien of the United States.

26 U.S.C. § 6325(b)(2)(A) (emphases added).

A fundamental purpose of § 6325(b)(2)(A) is to give clear title to the purchaser. Nothing in § 6325(b)(2)(A) purports to discharge any property other than the specific property or portion of a property that is discharged from tax liens in a discharge certificate. A properly recorded certificate of discharge issued pursuant to any subsection of § 6325(b) is "conclusive that the <u>property covered by such certificate</u> is discharged from the [tax] lien." <u>Id.</u> § 6325(f)(1)(B). This makes clear that the particular subsection of § 6325(b) that authorizes the discharge does not

-15-

operate to define that discharge. Rather, the language of the certificate controls.

Here, the Discharge Certificate was precise and discharged only 20 Rogers Street, Newton, Massachusetts, defined as "[a] certain parcel of land more fully described at the Registry of Deeds, Southern Middlesex, State of Massachusetts in Book 36209, Page 167." Of the "bundle of sticks" or collection of rights that comprised Hannon's ownership of 20 Rogers Street, see United States v. Craft, 535 U.S. 274, 278-79 (2002), the Certificate discharged only a specific piece of real property that Hannon was parting with and Newton was taking. It did not discharge the other sticks that made up Hannon's ownership interest in 20 Rogers Street, such as his contingent rights to property if that parcel of land was taken by eminent domain; these included the right to receive an initial damages award, which accrued after the parcel of land was taken by eminent domain, and the right to sue for more damages if Hannon deemed the initial award inadequate. Were there any doubt as to the limited scope of the discharge, the Certificate saved and reserved the "force and effect of [said] tax lien[s] against and upon all other property or rights to property to which said lien is attached, wheresoever situated." (emphasis added).

Nor was the scope of the discharge limited here by § 6325(b)(2)(A)'s instruction that the IRS receive a payment worth "not . . . less than the value . . . of [its] interest" in the

property discharged.  That instruction constitutes a precondition to the IRS's exercise of discretion to issue a discharge certificate.  It directs the IRS not to discharge property for less than what it calculates as the value of its interest in that property.  It does not modify the scope of the discharge beyond what is expressly included in the Certificate.[4]  Nor does it prevent the government's liens from attaching to any surplus in the initial pro tanto payment, and the government enforced its liens on that payment when it received $60,692.83, an amount that exceeded the specified § 6325(b)(2)(A) payment of $57,214.55.  In short, § 6325(b)(2)(A) is entirely consistent with the government's actions here and fully authorized them.

Manning's argument is that a different subsection, § 6325(b)(3), must be read with § 6325(b)(2)(A) and that it imposes limits on what may be discharged under § 6325(b)(2)(A).  Section 6325(b)(3) states:

> Subject to such regulations as the Secretary may prescribe, the Secretary may issue a certificate of discharge of any part of the property subject to the lien if such part of the property is sold and, pursuant to an agreement with the Secretary, the proceeds of such sale are to be held, as a fund subject to the liens and claims of the United States, in the same manner and with the same priority as such liens and claims had with respect to the discharged property.

_____

[4]  Section 6325(b)(2)(A) does not address what happens in cases where the IRS has accepted less than its interest in the property at the time of discharge due to fraud.

-17-

26 U.S.C. § 6325(b)(3).  Manning argues that because § 6325(b)(3) expressly articulates a way to discharge property while maintaining an interest in the proceeds from the sale of that property, whereas § 6325(b)(2)(A) requires the government to receive a specified payment in exchange for the discharge, § 6325(b)(2)(A) implicitly extinguishes the government's lien on any proceeds that exceed that payment.  This argument misconstrues the relationship between subsections (b)(3) and (b)(2)(A).  Both the plain language of the statute and the legislative history of these sections make clear the argument is wrong.  In fact, § 6325(b)(3) addresses a different problem, not present here, and does not affect the operation of § 6325(b)(2)(A) on these facts.  Rather, subsection (b)(3) applies to allow the resolution of disputes where the priority of the IRS liens is disputed before transfer of the property from the taxpayer.  That is not this situation.

To begin, interpreting § 6325(b)(2)(A) in light of § 6325(b)(3) is a dubious undertaking because Congress enacted § 6325(b)(3) in 1966, long after § 6325(b)(2)(A) was adopted,[5] in order to address a specific situation.  At that time, Congress noted that a predecessor version of § 6325(b)(2)(A) existed under which the IRS could discharge property if it is paid the value of the government's interest in that property.  Federal Tax Lien Act

---

[5]  The similarly worded predecessor to § 6325(b)(2)(A) was enacted as Section 509 of the Revenue Act of 1934, ch. 277, 48 Stat. 680, 757-58.

of 1966, H.R. Rep. No. 89-1884 (1966). However, no procedure then existed to facilitate the transfer of encumbered property where lienors of that property disputed the priority of their liens. So, Congress enacted subsection (b)(3) as a "new procedure [to] aid in the disposition of property where a dispute exists among competing lienors, including the United States, concerning their rights to specific property." Id. In this way, § 6325(b)(3) enables a sale of encumbered property without the immediate distribution of the proceeds from that sale to lienholders. It also ensures that federal tax liens remain attached to sale proceeds while a priority dispute ensues even if the taxpayer loses his interest in those proceeds. Section 7426(a)(3), in turn, coordinates with § 6325(b)(3) by allowing competing lienors to sue the United States to resolve priority disputes concerning "property [that] has been sold pursuant to an agreement described in [§] 6325(b)(3)." 26 U.S.C. § 7426(a)(3).

On appeal, Manning adopts the district court's interpretation of § 6325(b)(2)(A) in light of § 6325(b)(3). The district court reasoned that because § 6325(b)(3) sets forth a specific mechanism for maintaining liens on proceeds from the sale of discharged property, the government's failure to use that mechanism surrendered its liens on proceeds resulting from the

-19-

post-taking suit for undercompensation in this case.[6] <u>Hannon</u>, 820 F. Supp. 2d. at 257-58. In other words, the district court read subsection (b)(3) as implicitly limiting the government's power under subsection (b)(2). This misapprehends the congressional purpose behind § 6325(b)(3).

It was an error of law to interpret subsection (b)(3) as providing the exclusive means for maintaining liens on the proceeds of post-taking compensation proceedings. Section 6325(b)(3) (in concert with § 7426(a)(3)) does no more than create a useful procedure to facilitate the sale of encumbered property when there is a dispute as to the priority of federal tax liens. Rather than delay the sale (and risk losing it) during the time it takes to resolve priority disputes, §§ 6325(b)(3) and 7426(a)(3) give lienors the option to move their dispute to the proceeds of the sale and resolve it through litigation if need be. Where, as in this case, there was no priority dispute when the IRS discharged 20

---

[6] The district court relied on three out-of-circuit district court decisions it found persuasive in interpreting § 6325(b)(2)(a). <u>See</u> <u>Hannon</u>, 2012 WL 4390527, at *6-*7; <u>Hannon</u>, 820 F. Supp. 2d. at 257-58. None of these cases involved the taking of property by eminent domain. <u>See</u> <u>Estate of Frazier</u> v. <u>Dist. Dir., IRS</u>, No. 1:91-CV-1877-JTC, 1992 WL 472026 (N.D. Ga. Oct. 14, 1992); <u>In re Miller</u>, 98 B.R. 110 (Bankr. N.D. Ga. 1989); <u>United States</u> v. <u>Holtzclaw</u>, Civil No. S-84-403 MLS, 1988 U.S. Dist. LEXIS 16355 (E.D. Cal. Dec. 12, 1988). To the extent they support the district court's interpretation of § 6325(b)(2)(A), we disagree with their reasoning on this issue of law for the same reasons we reject the district court's statutory interpretation.

Rogers Street, use of § 6325(b)(3) was not compulsory to accomplish the discharge. Nor was it practicable.[7]

Manning does not and cannot dispute that before the IRS had discharged 20 Rogers Street from a portion of the federal tax liens, the IRS's federal tax liens of over $4 million had priority over Manning's judgment lien. In this case, the IRS had properly filed its notices of federal tax liens against Hannon's real and personal property, in compliance with both federal and Massachusetts law, by February 2003.[8] Manning did not file her judgment lien in the Middlesex County Registry of Deeds until June 28, 2005, clearly making her interest junior to the federal tax liens.

---

[7] The IRS can unilaterally implement a § 6325(b)(2) discharge. By contrast, § 6325(b)(3) requires the IRS and competing lienors to agree in writing to hold the proceeds from a sale of encumbered property in escrow. See 26 U.S.C. § 6325(b)(3); 26 C.F.R. § 301.6325-1(b)(3); Discharge Instructions, IRS Pub. 783 (June 2010). Absent a priority dispute, Merrill Lynch, which was paid in full out of the initial payment pro tanto, had no incentive to agree to tie up the proceeds from the eminent domain taking in escrow. Nor did the IRS.

[8] Federal law determines the priority that federal tax liens have against competing liens on a taxpayer's property. See Aquilino v. United States, 363 U.S. 509, 513-14 (1960). A federal tax lien is not valid against other lienholders, including judgment lien creditors such as Manning, until a notice of federal tax lien has been filed in the appropriate forum. 26 U.S.C. § 6323(a), (f). State law designates the appropriate forum. See id. § 6323(f)(1)(A). If state law is silent as to the appropriate forum, federal law designates a default forum where the IRS can file notice to assert the priority of its tax lien. See id. § 6323(f)(B).

-21-

Supreme Court case law establishes that in this case, where the government's federal tax liens were imposed and recorded before Manning had recorded her judgment lien against Hannon, the government's liens retain their preexisting priority to any property that Hannon later acquires, including the $420,000 in undercompensation damages he received in July 2010. See United States v. McDermott, 507 U.S. 447, 455 (1993); Glass City Bank of Jeanette, Pa., 326 U.S. at 268.

The unambiguous language of the Certificate and the statute resolve this case. The IRS could not have waived, relinquished, or surrendered its remaining tax liens on May 4, 2007, when the IRS issued the Discharge Certificate in this case. Newton did not take 20 Rogers Street by eminent domain until three days later on May 7, when it issued an order of taking for that parcel of land, and the taxpayer's cause of action for additional compensation arose after May 7. See Mass. Gen. Laws ch. 79, § 8A; Truck Terminal Realty Co. v. Bos. Redev. Auth., 339 N.E.2d 891, 891 (Mass. 1976).

B.      Massachusetts Law of Equitable Conversion Does Not Remove the Government's Tax Liens from Any Property that Was Not Expressly Discharged in a Discharge Certificate

Manning argues that the IRS discharge encompassed discharge of the proceeds of a post-taking undercompensation suit under the state law doctrine of equitable conversion. She starts with the proposition that Massachusetts law treats any damages

awarded for a taking by eminent domain as a substitute for the land taken.  See Cornell-Andrews Smelting Co. v. Bos. & P.R. Corp., 95 N.E. 887, 890 (Mass. 1911) ("[C]ompensation paid for land taken by the exercise of the power of eminent domain in equity represents the land and is subject to all the rights of persons who had rights in the land . . . ."). She contends this equitable conversion doctrine means the government's discharge of 20 Rogers Street from tax liens also gave up its interest in the later award of post-taking damages.  In contrast, she argues her liens attached to all of Hannon's eminent domain damages precisely because she never discharged her lien on 20 Rogers Street, while the IRS did.  This argument is wrong on several grounds.

First, federal law, not Massachusetts law, controls both the scope the IRS discharge in this case and the attachment of federal tax liens to Hannon's property and rights to property. Under controlling federal statutory law, a lien in favor of the government attaches to "all property and rights to property" held by a delinquent taxpayer.  26 U.S.C. § 6321 (emphasis added); see United States v. Rodgers, 461 U.S. 677, 701 (1983).  Moreover, once a federal tax lien is imposed (and recorded), it automatically attaches to any property that the taxpayer later acquires, such as Hannon's post-taking undercompensation damages, with the same priority it had over preexisting junior creditors like Manning. See McDermott, 507 U.S. at 455.

Second, a state law doctrine of equitable conversion, which might define the rights of state law creditors, does not extend the IRS's discharge of real property located at 20 Rogers Street to Hannon's post-taking right to sue for undercompensation damages. Section 6321 governs whether Hannon's right to sue for undercompensation damages is a "property or right to property" subject to the government's federal tax liens. For example, in Drye v. United States, 528 U.S. 49 (1999), the IRS had made assessments against a taxpayer and so had valid tax liens against all of his property and property rights under § 6321. Id. at 53. Six months later, the taxpayer's mother died intestate, and he exercised his right under Arkansas law to disclaim his inheritance. This disclaimer treated the taxpayer as if he had predeceased his mother, directing his share of the estate to his daughter, the next person in line. As such, under Arkansas law, the taxpayer's creditors could not reach the disclaimed property. Id. The Supreme Court held that "the disclaimer did not defeat the federal tax liens" because Arkansas law had given the taxpayer a valuable protected right to either inherit his mother's estate or channel the inheritance to a close relative. Id. at 52, 60. As a matter of federal law, this substantive state-delineated right was sufficient to count as a "right to property" under § 6321 to which federal tax liens attached. Cf. United States v. Bess, 357 U.S. 51, 56-60 (1958) (holding that delinquent taxpayer's right to

compel his insurer to pay him cash surrender value of policy constituted "right to property" under § 6321 subject to federal tax liens although state law insulated that cash surrender value from other creditors' liens).

We look to Massachusetts law only for the purpose of determining the nature of the substantive rights it grants Hannon as to 20 Rogers Street. See Craft, 535 U.S. at 278-79. Massachusetts statutory law gives Hannon the right to an initial payment of a "reasonable amount" if his land is taken by eminent domain, as well as a right to sue for undercompensation and receive additional damages for the taking. Mass. Gen. Laws ch. 79, § 8A. That ends the state law inquiry under § 6321.

As a matter of federal law, once Newton took 20 Rogers Street by eminent domain, Hannon's right to sue for and receive undercompensation damages for that taking qualifies as "property" or a "right to property" to which federal tax liens attach, and Manning does not argue otherwise. Rather, she claims that Massachusetts's equitable conversion doctrine transferred creditors' liens on 20 Rogers Street to Hannon's post-taking undercompensation damages, such that only creditors that had existing liens on 20 Rogers Street at the time of the taking could later claim an interest in those damages.[9] However, § 6321 does

_____

[9] Manning also argues that the government's discharge of 20 Rogers Street was unnecessary because under Massachusetts law, "an eminent domain taking in fee simple extinguishes all other

-25-

not put the government on par with other creditors but instead relates to the taxpayer's interests, allowing federal tax liens to follow all of the taxpayer's state-defined property rights regardless of state law restrictions on others seeking to reach the same interests. See United States v. Nat'l Bank of Commerce, 472 U.S. 713, 727 (1985).

Finally, Manning's argument misstates the relevant state law. She claims that due to equitable conversion, Massachusetts law recognizes only "one continuing interest" in real property and the statutory right to sue and receive damages when that property is taken by eminent domain. However, it is Massachusetts statutory law that divided Hannon's property interests in 20 Rogers Street, recognizing his right, which arose after the taking of the land, to receive and sue for eminent domain damages as distinct from his right to possess the land. See Mass. Gen. Laws ch. 79, §§ 8A, 16.[10]

interests in the property." New Eng. Cont'l Media, Inc. v. Town of Milton, 588 N.E.2d 1382, 1384 (Mass. App. Ct. 1992). The cases on which Manning relies, however, involve only private parties and so do not implicate federal tax law.

The government says this argument is both irrelevant and rests on a questionable premise that Newton could have removed the federal tax liens without agreement from the government. It is unsettled whether Newton might have had to bring a condemnation suit against the United States under 28 U.S.C. § 2410(a)(4) to clear title without the actions the IRS took. This squares with Newton's conduct in this case: Newton requested the discharge certificate from the IRS and postponed its vote on the final draft order of the taking until the IRS had approved the discharge of 20 Rogers Street. We need not decide the question.

[10] In a footnote, Manning asserts that this court should disregard ten pages of the government's brief because it did not

-26-

III.

Accordingly, we <u>reverse</u> with instructions that the district court enter summary judgment in the government's favor.

---

raise those arguments with the district court. Her failure to brief this issue waives it. <u>See</u> <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990).

<u>Appendix</u>

Certificate of Discharge:

Department of the Treasury-Internal Revenue Service
CERTIFICATE OF DISCHARGE OF PROPERTY FROM FEDERAL TAX LIEN
(<u>Under Section 6325(b)(2)(A) of the Internal Revenue Code</u>)

WHEREAS, Patrick J & Elizabeth Hannon . . . is/are indebted to
the United States for unpaid internal revenue tax, as evidenced
by:

| Notice of Federal Tax Lien Serial Number | Recording Information | Date Recorded | Taxpayer Identification Number | Amount Shown on Lien |
|---|---|---|---|---|
| (A) | (B) | (C) | (D) | (E) |
| 40318073 | Book: 37941 Page: 130 | 02-08-2003 | | $2,739,256.88 |
| 40318586 | Book: 38015 Page: 259 | 02-15-2003 | | $2,707,897.12 |
| 156245104 | Book: 42081 Page: 591 | 02-23-2004 | | $17,408.00 |

WHEREAS, to secure the collection of said tax, notice of the lien
of the United States, attaching to all the property and rights to
property of the said taxpayer on account of said tax
indebtedness, was filed with the Registry of Deeds, Southern
Middlesex, State of Massachusetts in accordance with the
applicable provisions of law.

WHEREAS, the lien of the United States, listed above, for
said tax has attached to certain property described as:

20 Rogers Street, Newton, MA

A certain parcel of land more fully described at the Registry
of Deeds, Southern Middlesex, State of Massachusetts in
Book 36209, Page 167.

WHEREAS, the Area Director of Internal Revenue has
determined that the value of the interest of the United
States in the foregoing property, under and by virtue of its
aforesaid tax lien, amounts to the sum of $57,214.55. In
addition, under the provisions of section 6325(d)(2), the
United States subordinates its tax lien to all reasonable and
necessary expenses incurred in connection with the sale of
the property or administration of the sale proceeds and any
interest I have determined will increase the amount realized
and facilitate collection of the tax liability. I have, therefore

authorized the issuance, under the provisions of section 6325(b)(2)(A) of the Internal Revenue Code, of a certificate discharging the above-described property from the tax lien of the United States upon the payment of the sum of $57,214.55 to be applied in part satisfaction of the liability in respect of the tax hereinbefore stated which sum has been paid to be so applied, and the receipt of which sum by me is hereby acknowledged;

NOW, THEREFORE, THIS INSTRUMENT WITNESSETH, that I, [Collection Area Director, North Atlantic Area of the Internal Revenue Service,] charged by law with the duty of collecting and enforcing the collection of internal revenue taxes due to the United States, and charged with the assessment hereinbefore stated, do, pursuant to the provisions of section 6325(b)(2)(A) of the Internal Revenue Code, discharge the property heretofore described from the aforesaid tax lien, saving and reserving, however, the force and effect of said tax lien against and upon all other property or rights to property to which said lien is attached, wheresoever situated.

WITNESS my hand at Boston, Massachusetts, on May 4, 2007.

[Signature Omitted]